Saad, PJ.
North Pointe Insurance Company (garnishee defendant) appeals by leave granted the July 1, 1996, order granting plaintiff Linda M. Helder’s motion for summary disposition brought under MCR 2.116(C)(9) (failure to state a valid defense). That order awarded Helder judgment against garnishee defendant for $100,000, plus interest, in satisfaction of a default judgment entered in plaintiffs favor against defendants Edward Sruba and E.J.E.C.S. Corporation in the underlying dramshop action. We reverse and remand.
FACTS AND PROCEEDINGS
North Pointe Insurance Company was the dram-shop liability insurer for E.J.E.C.S., a bar doing business under the name of The Neutral Comer. Sruba was the owner of the bar and the principal operating *502 officer of E.J.E.C.S. Plaintiff Helder was Sruba’s girlfriend from the fall of 1991 until January 1994.
On May 2, 1994, Helder commenced this action against Sraba and E.J.E.C.S. According to plaintiffs complaint, employees of the bar served Sraba alcohol when Sraba was visibly intoxicated, following which Sraba would beat and verbally abuse plaintiff. Plaintiff alleged that the beatings and other abuse occurred between the summer of 1992 and January, 1994, with the last beating resulting in Sraba’s criminal conviction.[1] The lower court record does not offer any details regarding this conviction.
Though the record provides no reason or explanation, neither Sraba nor E.J.E.C.S. answered plaintiff’s complaint, but rather allowed the trial court to enter a default on September 22, 1994. Because the bar was in bankruptcy, Sraba or E.J.E.C.S. delayed proceedings in Helder’s lawsuit against them. Accordingly, a default judgment in the amount of $100,749.51 did not enter until January 12, 1996. The judgment amount represented the mandatory minimum insurance the dramshop had to carry for two years (1992 and 1993), at $50,000 a year, under MCL 436.22a(2); MSA 18.993(1)(2). Contrary to Sraba’s contractual obligation under the insurance policy, and in violation of the insurer’s contractual rights to defend dramshop lawsuits—neither defendant Sraba nor his lawyer advised the insurance carrier of this suit. The insurer was thus deprived of any opportunity to raise any defenses to Helder’s claim that her former lover *503 injured her because of drinks he consumed in his own bar.
Plaintiff obtained and served a writ of garnishment against North Pointe on February 12, 1996, seeking to recover insurance proceeds to satisfy the default judgment. North Pointe filed its garnishee disclosure on February 26, 1996, and denied it was indebted to Sruba or E.J.E.C.S. because “principal defendant did NOT PROVIDE GARNISHEE WITH NOTICE OF PLAINTIFF’S CLAM, AS REQUIRED BY DEFENDANT’S INSURANCE POLICY WITH GARNISHEE.” According to North Pointe, the writ of garnishment was the first notice it received of plaintiff’s claim against Sruba and E.J.E.C.S. Plaintiff claims that during the bankruptcy proceedings, Sruba notified his insurer of the claim pursuant to the instructions of his attorney.
Plaintiff moved for summary disposition on the ground that a lack of notice was not a valid defense to the garnishment. MCR 2.116(C)(9). Plaintiff contended that MCL 436.22Í; MSA 18.993(6) prohibited North Pointe from asserting the notice provision in its policy as a defense against plaintiff’s claim. North Pointe argued that MCL 436.22f; MSA 18.993(6) did not apply to a defense based on a complete lack of notice of a claim, citing Henderson v Biron, 138 Mich App 503; 360 NW2d 230 (1984). Plaintiff responded that Henderson had been overruled by implication in Coburn v Fox, 425 Mich 300; 389 NW2d 424 (1986). The trial court agreed with plaintiff and granted her motion. We reverse.
LAW AND ANALYSIS
This appeal addresses the proper application of MCL 436.22Í; MSA 18.993(6), which provides:
*504 The [liquor liability] insurance policy hereinbefore mentioned shall cover the liability imposed by [MCL 436.22; MSA 18.993] and shall contain the following conditions:
That no condition, provision, stipulation or limitation contained in the policy, or any other endorsement thereon, shall relieve the insurer from liability (within the statutory limits provided by [MCL 436.22a; MSA 18.993(1)] for the payment of any claim for which the insured may be held legally liable under section 22 of said act. [Emphasis added.]
According to plaintiff’s interpretation of this provision, an insured’s failure to timely notify the insurer of a claim cannot relieve the insurer from liability. Garnishee defendant argues that plaintiff’s interpretation “provides a blueprint for guaranteed recovery for plaintiffs who collude with insureds against their liquor liability insurer.” We agree with garnishee defendant that plaintiff’s interpretation is not only wrong, but would encourage fraudulent and collusive lawsuits.
It is well established that the primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. In re Messer Trust, 457 Mich 371, 379-380; 579 NW2d 73 (1998). When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory. Western Michigan Univ Bd of Control v Michigan, 455 Mich 531, 541-542; 565 NW2d 828 (1997). Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest. McAuley v General Motors Corp, 457 Mich 513, 518; 578 NW2d 282 (1998). Plaintiff’s interpretation is erroneous for many reasons, but primarily *505 because it ignores a key phrase and creates absurd and unjust results.
The statute clearly states that policy conditions, provisions, stipulations, and limitations may not relieve the insurer from liability “for the payment of any claim for which the insured may be held legally liable under section 22 of said act.” MCL 436.22f; MSA 18.993(6) (emphasis supplied). An insurance carrier claiming that the insured’s failure to comply with a policy notice of claim or suit requirement deprives the insurer of the opportunity to investigate the validity of a troublesome claim is not relying on a policy condition or provision to avoid paying a “claim for which the insured may be held legally liable.” Plaintiff’s interpretation ignores the final phrase of the provision, and requires the insurer to pay even those claims for which the insured could not be held legally liable. This would create an absurd result, authorizing a lucrative windfall for any plaintiff lucky enough to sue a dramshop licensee who says nothing to the insurer and defaults. Worse yet, collusive litigants would gain a lucrative windfall for any plaintiff and defendant dramshop licensee who arrange a collusive dramshop action, default judgment, and then commence a garnishment proceeding against an unsuspecting insurer.
Accordingly, we interpret the statute to mean that the insured’s failure to notify the insurer, absent any evidence of prejudice to the insurer, cannot preclude the plaintiff’s recovery. We agree with the interpretation placed on this very provision by our Court in Henderson, supra. There, we held that MCL 436.22f; MSA 18.993(6) does not bar a dramshop-liability insurer from asserting a failure to notify defense *506 where that failure prejudiced the insurer.[2] Id., 506. Ostensibly, the legislative intent behind this provision was to protect injured third parties who otherwise might be disadvantaged by the acts or omissions of insureds. Our interpretation does not thwart this legislative intent because insurers remain obligated to demonstrate prejudice arising from the insured’s failure to notify. “[I]t is a well-established principle that an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position.” Koski v Allstate Ins Co, 456 Mich 439, 444; 572 NW2d 636 (1998). As this Court pointed out in Henderson, supra, 507, “the insurance company still would have the burden of proving it was prejudiced by the insured’s failure to notify it of the lawsuit.” Furthermore, as a practical matter, plaintiffs can easily protect their interests by learning the insurer’s identity through the discovery process or from public records and notifying the insurer of the action.
Moreover, our interpretation is consistent with Michigan policy disfavoring default judgments in order to achieve meritorious determinations of cases. Huggins v MIC General Ins Corp, 228 Mich App 84, 86; 578 NW2d 326 (1998); Levitt v Kacy Mfg Co, 142 Mich App 603, 607; 370 NW2d 4 (1985). This policy becomes more urgent where, as here, the party *507 responsible for paying the default had no opportunity to prevent entry of the default.
We therefore remand to give garnishee defendant the opportunity to demonstrate that it was prejudiced by the lost opportunity to demonstrate that plaintiffs claim was not one for which the insured could be held legally liable.[3]
Reversed and remanded. We do not retain jurisdiction.
Hoekstra, J., concurred.

 Plaintiff’s theory of dramshop liability for intentional torts is facially valid. Weiss v Hodge (After Remand), 223 Mich App 620; 567 NW2d 468 (1997).

 However, we believe that Coburn, supra, and Kleit v Saad, 153 Mich App 52; 153 NW2d 52 (1985), are inapplicable here because they involve the no-fault act, which is materially different from the dramshop liability act.

 As garnishee defendant, North Pointe bears the burden of establishing prejudice. JKleit, supra, 58. The issue of prejudice involves a finding of fact for the trial court. Id. In requiring the insurer to establish prejudice, Michigan law is more lenient than some other jurisdictions where prejudice is presumed as a matter of law when the insured defaults after failing to notify the insurer. See, for example, Harwell v State Farm Mut Automobile Ins Co, 896 SW2d 170, 174 (Tex, 1995).