HELDER v SRUBA

Docket No. 114885. Decided June 15, 2000. On application by the plaintiff
for leave to appeal, the Supreme Court, in lieu of granting leave,
reversed the judgment of the Court of Appeals and reinstated the
judgment of the circuit court.

Linda M. Helder brought an action in the Kent Circuit Court against
Edward Sruba and E.J.E.C.S. Corporation, alleging injuries result-
ing from assaults by Mr. Sruba on certain occasions, and that the
serving of alcoholic beverages by E.J.E.C.S. to Mr. Sruba was a proxi-
mate cause of his subsequent assaults of her on certain dates.
Neither Mr. Sruba nor E.J.E.C.S. filed an answer or any other
response. The court, H. David Soet, J., entered a default judgment
against Mr. Sruba and E.J.E.C.S., and, during garnishment proceed-
ings, granted summary disposition for the plaintiff against North
Pointe Insurance Company, E.J.E.C.S.'s dramshop insurer, on the
basis of MCL 436.22f; MSA 18.993(6), holding that it applied to the
insurer's lack-of-notice defense. The Court of Appeals, SAAD, P J.,
and HOEKSTRA, J. (JANSEN, J., dissenting), reversed. 234 Mich App 500
(1999) (Docket No. 198327). The plaintiff seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

MCL 436.22f; MSA 18.993(6) clearly and unambiguously does not
permit an insurer to relieve itself of liability under a lack-of-notice
defense.

MCL 436.22f; MSA 18.993(6) requires liquor liability policies to
provide that no condition, provision, stipulation, or limitation con-
tained in the policy or any other endorsement may relieve an
insurer from liability for the payment of any claim for which it is
held legally liable under MCL 436.22; MSA 18.993. The language is
clear and unambiguous and it must be applied as written. There-
fore, North Pointe cannot assert a lack-of-notice defense against
plaintiff to preclude her from recovering her default judgment
against defendants Sruba and E.J.E.C.S. Further, none of the parties
has attacked the default judgment, and there is no evidence of
fraud or collusion.

Reversed.

*Napieralski & Walsh, P.C.* (by *Peter P. Walsh*), for plaintiff-appellant.

*Thomas M. Tupper* for defendant-appellee North Pointe Insurance Company.

PER CURIAM. The plaintiff obtained a default judgment against the defendants, and then began garnishment proceedings to obtain the proceeds of an insurance policy that had been purchased by one of the defendants. The insurer defended by asserting that the insured had breached the insurance contract by failing to provide notice of the suit. On a statutory ground, the circuit court ordered the insurer to pay the plaintiff. The Court of Appeals reversed, but we reinstate the judgment of the circuit court.

I

From late 1991 through early 1994, plaintiff Linda M. Helder had a relationship with defendant Edward Sruba.[1] Mr. Sruba was the sole shareholder of E.J.E.C.S. Corporation, which operated a tavern called The Neutral Corner on Ann Street in Grand Rapids.

In a May 1994 complaint, Ms. Helder alleged that during the years of their relationship, she was "repeatedly assaulted" by Mr. Sruba. The complaint listed a number of specific dates, and stated that assaults had occurred on "other unknown dates." Ms. Helder charged that Mr. Sruba had "intentionally engaged in a pattern of conduct including the above mentioned assaults, verbal abuse, manipulation and

---

[1] Because this case was decided by default judgment, we take the facts from the pleadings and other papers in the circuit court file.

mindgames for the sole purpose of inflicting emotional distress upon the Plaintiff." She further alleged that Mr. Sruba had violated a January 1994 restraining order.[2]

Ms. Helder's complaint also listed E.J.E.C.S. as a defendant. She alleged that, on dates separately provided[3] to E.J.E.C.S., Mr. Sruba "was served alcoholic beverages while visibly intoxicated either by himself or by other employees of [E.J.E.C.S.]." She further stated that "the illegal serving of alcoholic beverages to [Mr. Sruba] on the dates set forth in the [statutory notice] was a proximate cause of [Mr. Sruba's] subsequent assaults of the Plaintiff on those dates."[4]

In her complaint, Ms. Helder alleged serious physical injuries, including broken bones, inner ear damage, broken teeth, and closed head injury.

Both Mr. Sruba and E.J.E.C.S. were served with the summons and complaint.[5] However, neither defendant filed an answer or filed any other response to this matter.

In this Court, Ms. Helder states that Mr. Sruba "testified in [a later] bankruptcy proceeding that he did notify his insurance carrier of this action pursuant to the instructions of his then attorney . . . ." However, North Pointe Insurance Company says that it never

---

[2] Ms. Helder reports that Mr. Sruba's behavior eventually resulted in two criminal prosecutions.

[3] The dates were listed in a notice required by statute. MCL 436.22e; MSA 18.993(5). This section was repealed by 1998 PA 58, and the notice requirement is now found in MCL 436.1801(4); MSA 18.1175(801)(4).

[4] The Court of Appeals has held that one can prosecute a dramshop action on the basis of an intentional tort by the allegedly intoxicated person. *Weiss v Hodge (After Remand)*, 223 Mich App 620, 625-632; 567 NW2d 468 (1997).

[5] Mr. Sruba, personally and as resident agent of E.J.E.C.S., was served at the Grand Traverse County Jail.

received notice of this action, and we will assume that to be true for purposes of this opinion.[6]

In June 1994, the circuit court entered the default of Mr. Sruba and E.J.E.C.S. We are told that proceedings for entry of a default judgment were delayed until 1996 because of the pendency of the bankruptcy. On the basis of Ms. Helder's documentation of injuries suffered at the hands of Mr. Sruba, the circuit court entered a November 1996 default judgment in her favor and against Mr. Sruba and E.J.E.C.S., jointly and severally, in the amount of $100,749.51, plus interest and costs.

Ms. Helder began garnishment proceedings against North Pointe Insurance Company in February 1996.[7] On the garnishee disclosure form, North Pointe answered, "Principal defendant did not provide garnishee with notice of plaintiff's claim, as required by defendant's insurance policy with garnishee."[8]

Ms. Helder moved for summary disposition on the ground that North Pointe's policy defense was ineffec-

---

[6] Ms. Helder supports her statement with a transcript of a portion of Mr. Sruba's bankruptcy proceedings. North Pointe protests that the transcript is being submitted for the first time, and it notes shortcomings in Mr. Sruba's testimony. We do not need to address North Pointe's complaints in this regard since, as indicated, we are assuming that it never received notice.

[7] Other garnishment-related papers have been filed in this case, but are not pertinent to the present appeal.

[8] A copy of the policy is not found in the files of the circuit court, the Court of Appeals, or this Court. As we have observed on other occasions, parties seeking relief or defending against a claim on the basis of contractual language should provide a copy of the document. See *Allstate Ins Co v Freeman*, 432 Mich 656, 703, n 2; 443 NW2d 734 (1989) (opinion of BOYLE, J.). See also MCR 2.113(F)(1). Cf. MCR 2.112(D)(1), which concerns the contents of the complaint.

tive in light of MCL 436.22f; MSA 18.993(6), which provided:[9]

> The insurance policy hereinbefore mentioned shall cover the liability imposed by [MCL 436.22; MSA 18.993], and shall contain the following conditions:
>
> That no condition, provision, stipulation or limitation contained in the policy, or any other endorsement thereon, shall relieve the insurer from liability (within the statutory limits provided by [MCL 436.22a; MSA 18.993(1)]), for the payment of any claim for which the insured may be held legally liable under [MCL 436.22; MSA 18.993].

North Pointe's rejoinder was that MCL 436.22f; MSA 18.993(6) did not apply to a defense based upon a complete lack of notice. *Henderson v Biron*, 138 Mich App 503, 506; 360 NW2d 230 (1984). In turn, Ms. Helder cited this Court's subsequent decision in *Coburn v Fox*, 425 Mich 300; 389 NW2d 424 (1986).[10]

The circuit court agreed with Ms. Helder that MCL 436.22f; MSA 18.993(6) was applicable, and granted summary disposition. The court ordered North Pointe to pay its policy limits of $100,000, plus interest.

The Court of Appeals reversed. 234 Mich App 500; 595 NW2d 157 (1999).[11] Judge JANSEN dissented, say-

---

[9] This section was repealed by 1998 PA 58, in which the Legislature enacted nearly identical language as MCL 436.1811; MSA 18.1175(811).

[10] The issue in *Coburn* was "whether the enactment of the Michigan no-fault insurance act invalidates any provision in a no-fault contract relieving the insurer of liability should the insured fail to cooperate in defending a claim by an injured third party." 425 Mich 302. This Court's conclusion was that, "[b]ecause of the compulsory nature of the liability insurance, the noncooperation of the insured is not a good defense in an action between a third-party victim and an insurer to the extent of the statutorily required minimum residual liability insurance." 425 Mich 312.

[11] Reh den, unpublished order entered May 26, 1999 (Docket No. 198327).

ing that the circuit court had correctly applied the statute.

Ms. Helder has applied to this Court for leave to appeal.

II

In a nutshell, here is how the Court of Appeals majority saw this matter:

> According to plaintiff's interpretation of [MCL 436.22f; MSA 18.993(6)], an insured's failure to timely notify the insurer of a claim cannot relieve the insurer from liability. Garnishee defendant argues that plaintiff's interpretation "provides a blueprint for guaranteed recovery for plaintiffs who collude with insureds against their liquor liability insurer." We agree with garnishee defendant that plaintiff's interpretation is not only wrong, but would encourage fraudulent and collusive lawsuits. [234 Mich App 504.]

The majority added, "[p]laintiff's interpretation is erroneous for many reasons, but primarily because it ignores a key phrase[12] and creates absurd and unjust results." 234 Mich App 504-505.

---

12 The majority explained:

The statute clearly states that policy conditions, provisions, stipulations, and limitations may not relieve the insurer from liability "for the payment of any claim for which the insured *may be held legally liable under section 22 of said act.*" MCL 436.22f; MSA 18.993(6) (emphasis supplied). An insurance carrier claiming that the insured's failure to comply with a policy notice of claim or suit requirement deprives the insurer of the opportunity to investigate the validity of a troublesome claim is *not* relying on a policy condition or provision to avoid paying a "claim for which the insured may be held legally liable." Plaintiff's interpretation ignores the final phrase of the provision, and requires the insurer to pay even those claims for which the insured *could not be held legally liable.* This would create an absurd result, authorizing a lucrative windfall for any plaintiff lucky enough to sue a dramshop licensee who says

"Accordingly," said the majority, "we interpret the statute to mean that the insured's failure to notify the insurer, absent any evidence of prejudice to the insurer, cannot preclude the plaintiff's recovery." 234 Mich App 505. The majority placed on the insurer the burden of showing such prejudice,[13] and remanded the case to the circuit court "to give garnishee defendant the opportunity to demonstrate that it was prejudiced by the lost opportunity to demonstrate that plaintiff's claim was not one for which the insured could be held legally liable." 234 Mich App 507.

III

Writing in dissent, Judge JANSEN relied on the plain language enacted by the Legislature. We agree with her analysis and, with slight editing to reflect the current status of this matter, adopt her opinion as our own.[14]

---

nothing to the insurer and defaults. Worse yet, collusive litigants would gain a lucrative windfall for any plaintiff and defendant dramshop licensee who arrange a collusive dramshop action, default judgment, and then commence a garnishment proceeding against an unsuspecting insurer. [234 Mich App 505.]

With respect to this portion of the majority analysis, Ms. Helder correctly observes that counsel for North Pointe did not rely on the final clause of MCL 436.22f; MSA 18.993(6) as he argued this matter in circuit court.

[13] In a case involving a failure to give notice of suit to a homeowners insurer, this Court said:

[I]t is a well-established principle that an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position. [Koski v Allstate Ins Co, 456 Mich 439, 444; 572 NW2d 636 (1998).]

[14] We have omitted the footnotes from Judge JANSEN's dissenting opinion.

[T]he trial court did not err in ruling that a dramshop liability carrier may not assert a lack-of-notice defense to a garnishment action because the applicable statute in this case, MCL 436.22f; MSA 18.993(6), clearly and unambiguously does not permit the insurer to relieve itself of liability under a lack-of-notice defense.

Pursuant to MCL 436.22f; MSA 18.993(6), liquor liability policies must contain a condition "[t]hat no condition, provision, stipulation or limitation contained in the policy, or any other endorsement thereon, shall relieve the insurer from liability . . . for the payment of any claim for which the insured may be held legally liable under [MCL 436.22; MSA 18.993]." Plaintiff asserts that this provision precludes defendant's lack-of-notice defense set forth in the dramshop liability policy. Garnishee defendant argues that this provision does not apply to a lack-of-notice defense, relying on [the Court of Appeals] decision in *Henderson v Biron*, 138 Mich App 503; 360 NW2d 230 (1984).

This case requires us to construe and apply MCL 436.22f; MSA 18.993(6). The "cardinal rule" of statutory construction is to identify and give effect to the intent of the Legislature. *Shallal v Catholic Social Services*, 455 Mich 604, 611; 566 NW2d 571 (1997); *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). The first step in discerning intent is to examine the language of the statute. *Id.* The language is to be read according to its ordinary and generally accepted meaning. *Shallal, supra*, p 611. Judicial construction is authorized only where the statute lends itself to more than one interpretation. *Id.* When statutory language is clear and unambiguous, the court must honor the legislative intent as clearly indicated in that language and no further construction is required or permitted. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 538; 565 NW2d 828 (1997); *Turner, supra*, p 27. Therefore, where the statute is clear on its face, "the role of the judiciary is not to articulate its view of 'policy,' but to apply the statute in accord with its plain language." *Rogers v Detroit*, 457 Mich 125, 140; 579 NW2d 840 (1998).

[We] find the language of MCL 436.22f; MSA 18.993(6) to be clear and unambiguous and, therefore, it must be applied

as written. No provision or limitation contained in the dramshop liability policy can relieve the insurer from liability for which the insured may be held legally liable. Therefore, North Pointe cannot assert a lack-of-notice defense against plaintiff to preclude her from recovering her default judgment against defendants Sruba and E.J.E.C.S. Further, there is nothing absurd or unjust about applying the plainly worded statute as written to the facts of this case. None of the parties [has] attacked the default judgment, for which there are clear remedies,[15] and there is not one shred of evidence of fraud or collusion in this case.[16] In this regard, [we] note that the Legislature has created a check against collusion by requiring the plaintiff to name and retain the intoxicated person who actually committed the injury as a defendant. See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 615; 321 NW2d 668 (1982); *Salas v Clements*, 399 Mich 103, 110; 247 NW2d 889 (1976).

[It is true that] in *Henderson, supra*, p 506, [the Court of Appeals] held that the prohibition contained in [MCL 436.22f; MSA 18.993(6)] does not preclude a dramshop liability insurer from asserting a lack-of-notice defense. However, [we] believe that *Henderson* . . . ignored the clear and unambiguous language of [MCL 436.22f; MSA 18.993(6)] and did not apply the rules of statutory construction in holding that a dramshop liability insurer is not precluded from asserting a lack-of-notice defense. [The Court of Appeals] decision in *Henderson* clearly violates the rule of statutory construction that a clear and unambiguous statute must be applied as written. If the role of the judiciary is not to articulate its view of policy, but to apply the statute in accord with its plain language, *Rogers, supra*, p 140, then, in applying [MCL 436.22f; MSA 18.993(6)] in accord with its

---

[15] Here, Judge Jansen cited MCR 2.603(D) and MCR 2.612.

[16] In this regard, Ms. Helder writes:

In fact, the principal defendant/insured has *twice* been *convicted* of crimes involving Plaintiff as a victim including an assault and a stalking offense. Furthermore, he has twice declared bankruptcy and forced us to litigate this case in that forum. Any allegation of collusion here is false, outrageous and insulting.

plain language, North Pointe cannot assert a lack-of-notice defense in this case.

Because [MCL 436.22f; MSA 18.993(6)] is clear and unambiguous and must be applied as written, it is not necessary to consider whether the Supreme Court's decision in *Coburn*, *supra*, implicitly overruled [the Court of Appeals] decision in *Henderson*. In any event, the facts and circumstances of *Coburn* are easily distinguishable from the present case because *Coburn* involved the automobile no-fault act and a lack-of-cooperation defense. In the same vein, North Pointe's reliance on *Kleit v Saad*, 153 Mich App 52; 395 NW2d 8 (1985), and *LeDuff v Auto Club Ins Ass'n*, 212 Mich App 13; 536 NW2d 812 (1995), is similarly misplaced because these two cases involve the no-fault act. This distinction is of further significance because MCL 257.520(f)(6); MSA 9.2220(f)(6) permits automobile no-fault insurers to assert a lack-of-notice defense. There is no similar provision regarding dramshop liability insurers, and [MCL 436.22f; MSA 18.993(6)] of the dramshop act specifically precludes dramshop liability insurers from relying on their policies to relieve themselves of liability where the insured may be held legally liable.

Accordingly, [we] apply the clear and unambiguous provision of [MCL 436.22f; MSA 18.993(6)] of the dramshop act to the facts of this case. North Pointe may not assert a lack-of-notice defense, as set forth in the dramshop liability policy with defendants, to relieve itself of liability where the insured was legally liable for its actions. [The Court of Appeals should have] affirm[ed] the trial court's judgment in favor of plaintiff. [234 Mich App 507-511.]

One portion of Judge JANSEN's dissent should be emphasized. As she states, none of the parties has attacked the default judgment, although MCR 2.603(D) and MCR 2.612 provide procedures for such a challenge. In the present case, North Pointe had the option, when given notice, of assuming the defense of Mr. Sruba and E.J.E.C.S. and moving to set aside the default judgment on the basis that there is a meritori-

ous defense.[17] That course is far different than defending the garnishment proceedings on the ground that North Pointe did not receive notice—a defense arising under the insurance contract and thus barred by MCL 436.22f; MSA 18.993(6).

MCL 436.22f; MSA 18.993(6) does not prohibit an insurer from raising a meritorious defense that the insureds' actions simply did not trigger liability under MCL 436.22; MSA 18.993. Again, however, North Pointe chose to defend the garnishment proceedings on the basis of lack of notice, instead of arguing— directly or in proceedings to set aside the default judgment—that its insureds were without liability under the dramshop act.[18]

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[17] Regarding such a motion, see *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219; 600 NW2d 638 (1999).

[18] In its submission to this Court, North Pointe does contest dramshop liability, though it does not deny the assaults or the resulting injuries. For instance, North Pointe vigorously argues that alcohol consumed by Mr. Sruba in Kent County had "absolutely nothing" to do with the final assault that occurred in Acme in Grand Traverse County. However, that was not the basis of North Pointe's answer to the garnishment disclosure, nor of its arguments in circuit court.