Markman, J.
I respectfully disagree with and dissent from the majority’s conclusion that the “last treatment” rule served to keep plaintiff’s professional malpractice action viable in this case.[1] Rather, I believe that the Court of Appeals correctly affirmed the trial court’s grant of summary disposition in defendants’ favor.
From the very limited record in this case, it appears that defendants were hired by plaintiffs to act as their personal and corporate accountants. Defendants prepared plaintiffs’ annual tax returns for the years 1974 through 1996, a period of twenty-two years. Plaintiffs’ 1991 and 1992 tax returns were audited by the Internal Revenue Service (IRS) in 1994, with the IRS presenting plaintiffs with a notice of deficiency in December 1995. Plaintiffs subsequently filed *492 a two-count complaint against defendants in August 1997, alleging professional negligence and fraud.
In lieu of answering plaintiffs’ complaint, defendants filed a motion for summary disposition under MCR 2.116(C)(7) (expiration of the applicable limitation period) and (8) (failure to state a claim). The circuit court granted defendants’ motion, and the Court of Appeals affirmed, with Judge Whitbeck dissenting.
This Court reviews the grant or denial of summary disposition de novo. Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, we review questions of statutory construction de novo as a matter of law. Sands Appliance Services, Inc v Wilson, 463 Mich 231, 238; 615 NW2d 241 (2000); Donajkow-ski v Alpena Power Co, 460 Mich 243, 248; 596 NW2d 574 (1999).
The essential question in this case is: When did plaintiffs’ claim of professional malpractice accrue for purposes of applying the pertinent limitation period? MCL 600.5805; MSA 27A.5805 provides that
[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
* * *
(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.
With regard to the time of accrual of a professional malpractice claim, other than one for medical malpractice, *493 [2] MCL 600.5838(1); MSA 27A.5838Q) states that
a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [Emphasis added.]
An action involving a claim based on professional malpractice (other than medical malpractice) may be commenced at any time within the applicable period prescribed in MCL 600.5805(4); MSA 27A.5805(4), or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. MCL 600.5838(2); MSA 27A.5838(2). A malpractice action that is not commenced within the time prescribed by this subsection is barred. Id.
The cardinal rule of statutory construction is to identify and give effect to the intent of the Legislature. Helder v Sruba, 462 Mich 92, 99; 611 NW2d 309 (2000). The first step in discerning intent is to examine the language of the statute. Id. If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. Western Michigan Univ Bd of Control v Michigan, 455 Mich 531, 538; 565 NW2d 828 (1997). “Each word of a statute is presumed to be used for a purpose, and, as far *494 as possible, effect must be given to every clause and sentence.” Robinson v Detroit, 462 Mich 439, 459; 613 NW2d 307 (2000).
In Michigan, the “last treatment” rule originated in De Haan v Winter, 258 Mich 293; 241 NW 923 (1932). At that time, the limitations statute contained no provision fixing the accrual point of a malpractice action. As in the present case, the De Haan Court was faced with the question:
When did plaintiff’s cause of action accrue? Until treatment of the fracture ceased the relation of patient and physician continued, and the statute of limitations did not run. [Citations omitted.] While decisions are not in accord upon this question, we are satisfied that in such an action as this the statute of limitations does not commence to run while treatment of the fracture continues. Failure to give needed continued care and treatment, under opportunity and obligation to do so, would constitute malpractice. During the course of treatment plaintiff was not put to inquiry relative to the treatment accorded him. [Id. at 296-297 (emphasis added).]
The legislative comment accompanying the 1961 enactment of § 5838, indicates that “[s]ection 5838 is based on the rule stated and followed in the Michigan case of De Haan." Morgan v Taylor, 434 Mich 180, 187, n 13; 451 NW2d 852 (1990).[3]
“The rationale for the last treatment rule has been explained on grounds that the patient, while his treatment continues, ‘relies completely on his physician and is under no duty to inquire into the effective *495 ness of the latter’s measures.’ ” Id. at 187-188 (emphasis added). I believe it is important to reiterate the facts of Morgan, a medical malpractice case. In Morgan, the plaintiff was an employee of D.W. Zimmerman Company and a member of United Auto Workers (uaw) Local 417. Zimmerman and the uaw contracted with the defendant Cooperative Optical Services, Inc. (COS); under the contract, each covered employee was entitled to an eye examination every two years. The plaintiff received eye examinations by COS staff in 1976, 1978, and on March 7, 1981, and August 18, 1983. Id. at 182. During the plaintiff’s March 1981 examination, a test for glaucoma indicated intraocular pressure beyond the normal range. However, the COS optometrist failed to take any further action. During the plaintiff’s August 1983 examination, abnormal intraocular pressure was again detected and the plaintiff was referred to an ophthalmologist, who determined that the plaintiff had incurred irreversible nerve damage due to the abnormal pressure. Id. at 183. The plaintiff sued, and the trial court found that the August 1983 examination amounted to “a continuation of treatment or services” within the meaning of MCL 600.5838(1); MSA 27A.5838(1); thus, the plaintiff’s claim of malpractice “was not barred by the statute of limitations because it had been filed within two years of the date the action accrued.” Id. at 184.
In the present case, the majority relies on the Court of Appeals dissent, which in turn relied on this Court’s analysis in Morgan, supra. Respectfully, I disagree with the dissent’s assertion that “[t]he touchstone” of the “last treatment” rule is the “continuing professional relationship between a professional and the person receiving the professional’s services *496 . . . Unpublished opinion per curiam, issued September 17, 1999 (Docket No. 207797) (Whitbeck, J., concurring in part and dissenting in part), slip op at 4 (emphasis in the original).
The plain language of subsection 5838(1) does not state that a claim of professional malpractice accrues on the last date of service (i.e., “last date of treatment”), period. Rather, the statutory language clearly defines the point of accrual, confining the last date of service expressly to those matters “out of which the claim for malpractice arose”; from this language, certainly, a professional relationship may continue on even though a malpractice claim arising out of that relationship has accrued and the clock has started to run with regard to the two-year limitation period. The Court of Appeals dissent and the majority’s adoption of the dissent’s analysis without explanation fail to acknowledge and give effect to the plain language of the entire sentence comprising subsection 5838(1), thereby rendering the modifying phrase “matters out of which the claim for malpractice arose” superfluous.
The majority asserts that, in enacting § 5838, the Legislature “extended” or “expanded” upon the common-law “last treatment” rule set forth in De Haan. See ante at 488. However, in my judgment, the legislative comment that § 5838 “is based on the rule stated and followed in the Michigan case of De Haan” effectively militates against the majority’s assertion. The facts in De Haan involved a distinct period of medical treatment, relating to a distinct medical condition, with this Court concluding that a claim of professional malpractice, arising “[djuring the course of [that] treatment,” would not be barred by the limita *497 tion period as long as that particular course of treatment, for that particular medical condition, continued. Id. at 297. Specifically, De Haan did not determine that once the treatment of the plaintiff’s fracture ceased, his claim of professional malpractice, arising out of the treatment for the fracture, remained viable as long as a physician-patient relation continued.
The phrase “as to the matters out of which the claim for malpractice arose,” found in subsection 5838(1), clearly equates with the phrases “[u]ntil treatment of the fracture ceased” and “[d]uring the course of treatment” found in De Haan. Id. at 296, 297. Moreover, Morgan refers to the De Haan language “while . . . treatment continues” in attempting to explain the rationale for the “last treatment” rule. 434 Mich 187. Importantly, this Court, in determining that the facts of Morgan were “unique,” limited its holding to the facts of that case. Id. at 194. Thus, I can discern no logical force to the suggestion that the Legislature intended to broaden the common-law “last treatment” rule, as stated and applied in De Haan, when it drafted the language of § 5838.
Further, the facts in the present case, although very sparse for purposes of appellate review, are nevertheless quite distinguishable from the facts found in Morgan, supra. In Morgan, there was a requirement under an employer/union contract that the plaintiff be given an opportunity to have his eyes examined and reevaluated every two years.[4] Granted, there may have been changes that occurred in the plaintiff’s *498 eyes between visits, but it would be necessary to address these changes in the context of the condition of the plaintiffs same eyes, determined at the last visit and every visit before that. There was certainly an interrelation, even an interdependency, between one eye examination and the next because the same eyes were being examined each time.
However, plaintiffs’ annual tax returns in the present case cannot be considered analogous to the plaintiff’s eyes in Morgan. The preparation of annual tax returns involves the compilation and computation of a distinct and discrete body of information, generally not the same from year to year. In other words, in each successive year, a client is not bringing to his accountant the same aggregation of receipts to be reevaluated and reexamined, to discern if some change has taken place in that particular body of information and data. Rather, the client generally brings in a new aggregation of receipts specific and distinct to the year for which the tax return is being completed. An accountant is generally not “caring for” the client’s same tax return from year to year, as a physician cares for the same set of eyes, or the same liver, kidneys, or heart, from examination to examination. Thus, in the present case, each successive annual tax return represented “the matters out of which the claim for malpractice arose,” a phrase to which the Court of Appeals dissent and the majority here give little apparent effect.
*499 Further, I do not share the Court of Appeals dissent’s concern that “with regard to business income taxation, certain matters such as depreciation of business assets and eligibility for certain tax credits often depend on facts that extend further into the past than the prior tax year.” Slip op at 5, n 3. While such an assertion may or may not be accurate, the important factor is that the body of information and data used each successive year to compile, compute, and prepare an income tax return is not the same; it is not analogous to the same set of eyes or the same liver or the same heart that is examined and evaluated by a physician at each office visit. The fact that there may be some common information that is used in preparing an annual income tax return does not change the fact that it is used in conjunction with an entirely different and distinct amalgam of information and data collected specifically for each year for which the tax return is being prepared, an amalgam representing the “matters out of which the claim for malpractice [may arise]” for purposes of establishing the claim’s accrual date. Subsection 5838(1).[5]
*500 In the present case, the “matters out of which [plaintiffs’] claim for malpractice arose” involved defendants’ preparation of their 1991 and 1992 income tax returns. Thus, under the plain language of subsection 5838(1), plaintiffs’ claim of professional malpractice accrued, and the two-year limitation period began to run, when defendants worked their last day with regard to these distinct returns. Even assuming that defendants worked on plaintiffs’ 1992 *501 tax return through December 1993, plaintiffs’ cause of action for malpractice was barred by subsection 5805(4) on the last day of December 1995. Plaintiffs’ complaint was not filed until August 1997.[6]
The Court of Appeals dissent’s analysis and the majority’s reliance on this analysis, effectively erode the policy bases for having statutory limitation periods in the first place. Obviously, while one policy base is to afford plaintiffs a reasonable opportunity to bring suit, statutes of limitation are also intended to: (1) compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend; (2) relieve a court system from dealing with stale claims, where the facts in dispute occurred so long ago that evidence was either forgotten or manufactured; and (3) protect potential defendants from protracted fear of litigation. Chase v Sabin, 445 Mich 190, 199; 516 NW2d 60 (1994).
Asserting, as the Court of Appeals dissent does in the present case, that the termination of the professional relationship is the beginning and end of the analysis in determining when a professional malpractice claim has accrued, tolls the limitation period in a potentially large number of professional malpractice cases, pending the ultimate and final termination of the professional relationship. Under the majority’s interpretation of subsection 5838(1), a professional relationship may exist for one hundred years; if, *502 perchance, malpractice was committed in the very first year of the relationship, a claim could potentially remain viable for another 101 years. Certainly, a reasonable time would have long since passed, thereby undermining the opposing party’s ability to defend such a stale claim, extending the potential defendant’s apprehension of litigation to unreasonable and unacceptable lengths, and unnecessarily burdening the judicial system with claims so stale as to be virtually untriable. See Chase, supra.
In enacting § 5838, it is reasonable to conclude that the Legislature addressed the conflict between the accrual of a simple tort claim, which generally involves but a single act or omission, and the accrual of a professional malpractice claim, where actual malpractice may occur within an extended, but nevertheless distinct, period of continuing professional service.[7]
*503 The “matters out of which [plaintiffs’] claim for malpractice arose” involved defendants’ preparation of plaintiffs’ 1991 and 1992 income tax returns. Pursuant to the plain language of subsection 5838(1), the last date on which defendants worked in preparing such returns was the date on which plaintiffs’ claim for professional malpractice accrued for purposes of the running of the statute of limitations. Because plaintiffs failed to file their complaint until well after the applicable two-year limitation period had run, their claim for professional malpractice, in my judgment, was time-barred and the circuit court properly granted summary disposition in favor of defendants in this case. I would, therefore, affirm.

 I concur with the majority’s determination that plaintiffs other claims on appeal are not worthy of additional relief.

 The accrual of a medical malpractice claim is determined pursuant to MCL 600.5838a; MSA 27A.5838(1).

 The “last treatment” rule announced in De Haan v Winter, supra at 241, was codified in 1961 PA 236, the Revised Judicature Act of 1961, MCL 600.5838; MSA 27A.5838. The rule was later amended by 1975 PA 142, and later repealed, as to medical malpractice actions, by 1986 PA 178.

 I find the existence of a contractual agreement in Morgan a highly distinguishable fact not present in the instant case. I believe that this Court, in Morgan, also considered the contractual agreement to be of peculiar importance in reaching its decision:
*498 Particularly in light of the contractual arrangement which bound defendant and entitled plaintiff to periodic eye examinations, it cannot be said that the relationship between plaintiff and defendant terminated after each visit. [Id. at 194 (emphasis added).]

 In the present case, the only allegations specifically made by plaintiffs, in bringing their claim of malpractice, are that: (1) the professional relationship with defendants existed from 1974-1996, (2) the ms audited the annual returns in two of those years, 1991-92, and (3) pursuant to this audit, plaintiffs were assessed additional taxes for these two years. Plaintiffs here presented no allegations that any of the individual annual tax returns completed by defendants over the twenty-two-year professional relationship contained any information or data that carried over from one year to the next, or that each annual tax return was not otherwise separate and distinct.
However, the majority here would place the burden upon the defendant to come forward, in bringing a motion for summary disposition pursuant to MCR 2.116(C)(7), with additional evidence establishing that the entirety of the professional relationship did not consist of “the matters out of which the claim for malpractice arose,” in order to prevail against a plaintiff’s assertion that the claim for malpractice did not accrue until the end *500 of the professional relationship. Ante at 490, n 19.1 do not agree with this allocation of the burden in the application of subsection 5838(1). Under the majority’s approach, it appears that as long as a plaintiff pleads the existence of a professional relationship, “the matters out of which the claim for malpractice arose" will be presumed to consist of the entire duration of the relationship, a presumption which, in my judgment, runs contrary to the statutory language of subsection 5838(1).
The majority’s argument would be more compelling if the instant matter involved the treatment of, or the provision of service to, the same eyes, the same pancreas, the same heart, or any other object or transaction that is treated or serviced on a continuing or interrelated basis. Thus, arguably it may be incumbent upon a defendant, when faced with a professional malpractice action involving such an object or transaction, to come forward with additional evidence demonstrating that one provided treatment or service was distinct from another. But here, in my judgment, the individual annual tax returns cannot truly be equated with the same set of eyes, pancreas, heart, or other object or transaction that is treated or serviced on a continuing or interrelated basis. Thus, I believe that it is the plaintiffs burden, not the defendant’s, to set forth well-pleaded allegations evidencing that there existed some connection between treatments or services occurring within the professional relationship.
In stating that “it is clear here that plaintiffs, rather than receiving professional advice for a specific problem, were receiving generalized tax preparation services from defendants,” ante at 489, the majority gainsays the discrete nature of each individual annual tax return prepared by defendant, and essentially considers the termination of the professional relationship itself (i.e., the end of plaintiffs “receiving generalized tax preparation services”) as the point at which plaintiffs’ claim for malpractice accrued. The statutory phrase “as to the matters out of which the claim for malpractice arose” is, thus, given little effect. Essentially then, my concerns about the majority’s allocation of the burdens in (C)(7) motions parallel my larger concerns about the majority’s focus upon the professional relationship in a malpractice action rather than upon the “matters out of which the claim for malpractice arose.”

 I do not believe it is necessary to elaborate on the six-month discovery rule of MCL 600.5838(2); MSA 27A.5838(2). Plaintiffs knew as early as December 1995, when they received the irs deficiency notice, that a possible cause of action existed against defendants. See Solowy v Oakwood Hosp Corp, 454 Mich 214, 223; 561 NW2d 843 (1997) (once a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim).

 For example, in 1990, Mr. Smith is sued in a premises liability action. He retains Lawyer Jones for the purpose of legal representation. Because he is an extremely busy professional, Lawyer Jones overlooks the issue of personal jurisdiction in the action against Mr. Smith, fails to object to the clear absence of such jurisdiction, and, instead, files an answer on Mr. Smith’s behalf, effectively waiving the issue. After extended discovery, the litigation proceeds to trial and ultimately, in 1995, to a large jury verdict against Mr. Smith. Lawyer Jones persuades Mr. Smith to appeal the verdict and Mr. Smith consents. During the pendency of the appeal process, Mr. Smith, in 1996, is involved in an automobile accident and is sued by a person who was a passenger in the car with which Mr. Smith collided. Mr. Smith again retains Lawyer Jones to represent his legal interests in this second case. In 1997, the Michigan Court of Appeals affirms the 1995 jury verdict against Mr. Smith and he satisfies himself that further appeal is futile. The 1996 automobile accident lawsuit involves protracted litigation and continues into 2001 when it is finally set for trial. Fortunately for Mr. Smith, a jury, in 2002, returns a verdict of no cause of action regarding the 1996 automobile accident lawsuit.
Before the enactment of § 5838, the general tort statute of limitation would have applied, and Mr. Smith’s claim against Lawyer Jones, for failing to object to personal jurisdiction in the first lawsuit, would have *503 accrued in 1990, at the time the malpractice occurred, MCL 600.5827; MSA 27A.5827, and the limitation period would have run three years after the actual act of malpractice. MCL 600.5805(9); MSA 27A.5805(9). However, after the enactment of § 5838, in applying the plain language of this statute to this example, Mr. Smith’s malpractice claim would have accrued in 1997, at the end of Lawyer Jones’ representation of Mr. Smith in the 1990 premises liability action; the limitation period would have run two years later. MCL 600.5805(5); MSA 27A.5805(5).
A second example might involve a patient visiting a dentist on five separate occasions for the purpose of repairing a tooth. In the course of this treatment, a root canal is necessary, and the dentist negligently damages the nerve that serves the tooth, causing severe and chronic jaw pain. The purpose of subsection 5838(1), prior to the enactment of § 5838a, would be served in its application because there would be no necessity to parse out the visits, thereby placing an extremely confusing burden on the parties or factfinder, to identify which specific visit resulted in the negligently provided treatment. It would only be necessary to examine the entire sequence of events, regarding that course of treatment, to determine the accrual date of the plaintiff’s claim of professional malpractice.
Thus, a very different result is obtained under the facts of either example when the plain language of subsection 5838(1) is applied, compared with the result obtained under the general tort statute of limitation.