Kelly, J.
(dissenting).
introduction
We granted leave to appeal to determine what constitutes an adequate notice of intent under MCL 600.2912b(4) preparatory to the filing of a medical malpractice complaint. The majority concludes that the statute requires a high degree of specificity at the notice stage of a potential lawsuit.
I respectfully disagree. Requiring such a level of specificity is inconsistent with the statute’s words and purpose. I would hold that the notice of intent must provide sufficient information about a claim that a defendant may ascertain and investigate its basis and determine whether to discuss settlement. After reviewing the notices of intent that plaintiff provided in this case, I conclude that they satisfy the statute’s requirements. Therefore, I would affirm the decision of the Court of Appeals.
facts and procedural history
Early in her pregnancy, plaintiff experienced severe abdominal pain and bleeding. The defendant physicians *703 diagnosed a spontaneous abortion, performed a dilation and curettage procedure, and sent plaintiff home to recover.
Plaintiffs pain persisted. Three days later, it worsened and she sought care at the defendant hospital. The emergency room doctor, defendant Atkins, diagnosed cramps and released plaintiff.
Later that night, plaintiff returned to the defendant hospital. It was determined that she had had an ectopic pregnancy that had ruptured her left fallopian tube. The defendant physicians removed plaintiffs left fallopian tube. Because her right fallopian tube had been removed several years earlier, the operation rendered her sterile. Plaintiff brought suit for medical malpractice. She claimed that the physicians’ misdiagnoses led to her sterility.
Plaintiffs counsel sent to the defendant hospital an initial notice of intent to sue, as required by MCL 600.2912b(4).[1] Counsel amended the notice approxi *704 mately a month later, added other defendants who are agents or employees of the hospital, and sent the amended notice to them.
Ultimately, plaintiff brought suit and defendants moved for summary disposition. They asserted that the notices of intent failed to comply with MCL 600.2912b(4), and because by then the statutory period of limitations had expired, plaintiffs claims were barred. The trial court granted the motion. The Court of Appeals vacated the decision and remanded the case. 240 Mich App 175; 610 NW2d 285 (2000). It held that defendants had waived their right to challenge the sufficiency of the notices.
This Court granted leave to appeal. A majority found that a challenge to the sufficiency of the notices had not been waived. It then remanded the case to the Court of Appeals to consider whether plaintiff had complied with the statute’s notice requirements. Roberts v Mecosta Co Gen Hosp, 466 Mich 57; 642 NW2d 663 (2002) (Roberts I). On remand, the Court of Appeals held that the plaintiff had complied with the requirements. Roberts v Mecosta Co Gen Hosp (On Remand), 252 Mich App 664; 653 NW2d 441 (2002). We again granted leave to appeal. 468 Mich 869 (2003).
STANDARD OF REVIEW
We review summary disposition judgments de novo. Harvey v Michigan, 469 Mich 1, 6; 664 NW2d 767 *705 (2003). We also review questions of statutory interpretation de novo. Omelenchuk v City of Warren, 461 Mich 567, 571 n 10; 609 NW2d 177 (2000). See also Roberts I at 62.
STATUTORY CONSTRUCTION AND ANALYSIS
The issue before us is whether plaintiffs notices satisfied the requirements of MCL 600.2912b(4). Our duty is to determine what the Legislature intended. Omelenchuk at 576 n 19. We begin with the language of the statute, and if the intent of the Legislature is clearly expressed, no further construction is warranted. Helder v Sruba, 462 Mich 92, 99; 611 NW2d 309 (2000).
The statute by its terms requires that the notice contain a “statement” of at least six items: (1) the factual basis for the claim, (2) the alleged applicable standard of practice or care, (3) the alleged manner in which the applicable standard of practice or care was breached, (4) the alleged action that should have been taken to comply with the applicable standard of practice or care, (5) the manner in which the breach of the standard of care proximately caused the injury, and (6) the names of all health professionals and health facilities that the claimant is notifying under the statute. MCL 600.2912b(4).
To ascertain what the Legislature intended by this statute, we first examine the meaning of the word “statement.” The statute does not define “statement,” and a resort to a lay dictionary to ascertain the meaning intended is of limited usefulness. One dictionary provides:
Statement, n 1. something stated. 2. a communication or declaration in speech or writing, setting forth facts, *706 particulars, etc. 3. a single sentence or assertion: I disagree with your last statement. [Random House Webster’s College Dictionary (1995).]
A “statement” can be merely a general assertion or it can be a detailed description.
Plaintiff argues that the statute requires the former, and defendants argue that it requires the latter. The word as it appears in the sentence is susceptible to both meanings. Thus, to determine what the statute intends, we examine its structure as a whole, and particularly, the text surrounding the word “statement.” G C Timmis & Co v Guardian Alarm Co, 468 Mich 416, 420; 662 NW2d 710 (2003).
In discerning the intended meaning, we consider also the Legislature’s apparent purpose in enacting the provision. In re Wirsing, 456 Mich 467, 474; 573 NW2d 51 (1998). We may even consider legislative history. Adrian School Dist v Michigan Pub School Employees Retirement Sys, 458 Mich 326, 335; 582 NW2d 767 (1998).
The statute in question requires that claimants alleging medical malpractice send a notice of intent to sue to potential defendants at least 182 days before filing a complaint. MCL 600.2912b(l). Each potential party is then required to make available to the others medical records in his possession relating to the claim. MCL 600.2912b(5).
Within 154 days after receiving the notice of intent, the defendants are required to respond to it stating (1) the factual basis for their defense to the claim, (2) the standard of practice or care that they allege is applicable, (3) the manner in which they claim to have complied with the standard of care, and (4) the reasons why they contend that they were not the proximate cause of the plaintiffs alleged injury. MCL 600.2912b(7).
*707 The statute anticipates that the defendants will often challenge the alleged applicable standard of practice or care and the manner in which it was breached. Id. The statutory period of limitations is tolled during the waiting period after the notice of intent is sent. MCL 600.5856(d). The 182-day waiting period before the filing of a complaint is immediately lifted if the defendants communicate in writing that they do not intend to settle the claim. MCL 600.2912b(9).
The overall structure and the operation of the notice provision suggest that the Legislature intended the act to encourage settlement discussions.[2] The 182-day waiting period enables the parties to engage in settlement discussions before initiating a lawsuit, possibly avoiding litigation entirely. During this period, information is exchanged without regard to the formal rules of discovery.
Moreover, the plaintiff is effectively immobilized while awaiting a response from the defendants. The waiting period is waived only if the defendants file written notice that they do not intend to settle the claim.
At this stage in the dispute, it is unlikely that all anticipated experts and witnesses will have been identified and deposed. Theories of liability and defenses may not have been developed with precision. A higher level of specificity about a claim emerges from the information exchanged by the parties after the notice is sent.
The statute works no unfairness on defendants. The potential defendants who receive the notice assuredly *708 possess a high level of medical expertise. They do not require information of great specificity in order to begin investigating an impending lawsuit. Also, most of the records pertinent to a medical malpractice claim are likely to be under the control of the defendants. A general assertion of the basis for the claim and of the items required by the statute is sufficient to inform them about the claim and to encourage settlement discussions.
Moreover, the provision does not require a “unique standard,” “specific” information, or a “particularized” statement as the majority asserts. Ante at 694-695, 696. Had the Legislature intended extensive detail in the notice, it would have required it.
Numerous other statutes specify “detailed,” “complete,” or “full” statements, or statements made “with specificity.” In the State Employees’ Retirement Act, for example, each member is required to file a “detailed statement” of his prior service as an employee. MCL 38.14.
MCL 500.424(2) in the Insurance Code provides:
In addition to subsection (1), an alien insurer shall make and execute under oath a report of its financial standing and of its deposit together with a full statement of its business in the United States for the year preceding the statement pursuant to section 438. [Emphasis added.]
MCL 462.2(2) in the railroad commission act requires the governor to provide a “complete statement” of the charges against a railroad commissioner after removing the commissioner for neglect of duty or malfeasance. MCL 333.22231(4) states:
(4) Before a final decision on an application is made, the bureau of the department designated by the director as responsible for the certificate of need program shall issue a proposed decision with specific findings of fact in support of the proposed decision with regard to each of the criteria *709 listed in section 22225. The proposed decision also shall state with specificity the reasons and authority of the department for the proposed decision. The department shall transmit a copy of the proposed decision to the applicant. [Emphasis added.]
These provisions demonstrate that the Legislature knows what phrasing to use when it intends to require extensive detail. Because it did not explicitly mandate such specificity in this statute, we should refrain from adding it ourselves.
In the past, the Court has avoided making a requirement that notices be detailed if they serve the object of the statute and do not prejudice the defendant. Hum-mel v Grand Rapids, 319 Mich 616, 625; 30 NW2d 372 (1948). The decision in Omelenchuk recognized that tolling provisions should not be traps for the unwary and that, without proper notice, there can be no tolling. Given that medical malpractice actions are complex and fact-intensive, the Court is ill-advised to require a detailed blueprint for notices of intent where the Legislature did not.[3] Omelenchuk at 576, n 19.
FACTUAL ANALYSIS
With these considerations in mind, I examine the notices that plaintiff sent in this case to determine if they satisfy the statute.
*710 The September 19, 1996, notice of intent, amending the August 15, 1996, notice sent to the defendant hospital set out the following factual basis:
This is a claim for negligence which occurred on October 4, 1994, at Mecosta County General Hospital. It is claimed that on said date while pregnant with her first child, Claimant presented herself to Mecosta County General Hospital complaining of severe pain. At that time a diagnosis of a spontaneous abortion was made and a D and C was performed. Claimant was sent home at that time.
Over the course of the next few days Claimant continued to experience pain and cramping and, on October 7, 1994, was again seen at Mecosta County General Hospital. Claimant was told that the pain she was experiencing was cramps from the D and C she had done and was sent home.
Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst. Emergency surgery was performed at that time and her left tube was removed.
Claimant had her right tube removed approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have any children.
The September 23, 1996, notice of intent sent to the remaining defendants gave the following factual basis:
This is a claim for negligence which occurred on October 4, 1994, at Obstetrics & Gynecology of Big Rapids. It is claimed that on said date while pregnant with her first child, Claimant presented herself to Barb Davis, PAC, Dr. Michael Atkins, and Dr. Gail DesNoyers complaining of severe abdominal pain and bleeding. At that time a diagnosis of a spontaneous abortion was made and a D & C was performed at Mecosta County General Hospital. Claimant was sent home at that time, despite Dr. DesNoyer’s [sic] knowledge of Claimant’s history of a prior ectopic pregnancy.
*711 Over the course of the next few days, Claimant continued to experience pain and cramping and, on October 7, 1994, was seen at Mecosta County General Hospital by Dr. Michael Atkins. Claimant was told that the pain she was experiencing was cramps from the D & C she had done and was sent home.
Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst. Emergency surgery was performed at that time and her left tube was removed.
Claimant had her right tube removed approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have any children.
In these statements, plaintiff set out the factual circumstances, alleged an initial misdiagnosis, and stated the correct diagnosis.
The September 19 notice articulated the applicable standard of care:
Claimant contends that the applicable standard of care required that Mecosta County General Hospital provide the claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standards of care.
Similarly, the September 23 notice contained the following:
Claimant contends that the applicable standard of care required that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, provide the Claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and *712 assistance in the care and treatment of her case and to render same in accordance with the applicable standards of care.
Our courts have long recognized that medical malpractice is generally the failure to exercise that degree of skill, care, and diligence exercised by members of the same medical profession. Dorris v Detroit Osteopathic Hosp Corp, 460 Mich 26; 594 NW2d 455 (1999); Adkins v Annapolis Hospital, 116 Mich App 558, 564; 323 NW2d 482 (1982), affirmed 420 Mich 87; 360 NW2d 150 (1984). Plaintiffs notices state that the standard of care is to provide competent services. Because this is sufficiently close in meaning to exercising professional care, it meets the requirement of MCL 600.2912b(4)(b) to delineate the appropriate standard of care.
Where the standard of care is stated generally, it is unsurprising that the same standard is specifically applicable to each defendant. The majority’s conclusion that the Legislature intended that there be the requirement of a unique “standard applicable specifically” to each defendant, ante at 694, is myopic. This requirement is not in the statute. Hence, it does not exist.
To state the manner in which the alleged standard of care was breached under MCL 600.2912b(4)(c), the September 19 notice to the defendant hospital refers to paragraph two of the notice. The September 23 notice contains the following statement: “Claimant claims that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, failed to provide her with the applicable standard of practice and care outlined in paragraph 2 above.” It is manifest that plaintiff claims that the actions of the defendant physician did not fulfill the duty of care owed to plaintiff.
*713 Both notices refer to paragraph two of the respective notices to state the “[alleged] action that should have been taken to achieve compliance with the alleged standard of practice or care” and “the manner in which [it is alleged] the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.” MCL 600.2912b(4)(d), (e). When these paragraphs are read together with the first paragraphs, they state that the defendants should have correctly diagnosed plaintiff according to their professional duty. They assert that a correct diagnosis would have prevented the serious medical injury that plaintiff suffered. Finally, the notices name the defendants. MCL 600.2912b(4)(f).
I agree with the Court of Appeals that these notices are not “picture[s] of clarity” or “the ‘perfect notice.’ ” 252 Mich App 673. However, I would find them sufficient under the statute.[4]
CONCLUSION
I would find that the Legislature intended that parties alleging medical malpractice under MCL 600.2912b(4) provide notice of intent to sue that includes a succinct statement of certain enumerated items. It did not intend that the statement contain extensive details. The statement simply must provide *714 notice of a potential claim sufficient to allow potential defendants to ascertain the basis for the claim and enter into settlement discussions.
The statements in the notices of intent to sue provided by plaintiff in this case satisfied the requirements of MCL 600.2912b(4). They addressed each of the statutorily enumerated items and provided adequate notice of plaintiffs claims. Defendants were given enough information to investigate the basis for the claims and consider settlement. Defendants have not asserted that they misunderstood the notices; they have asserted merely that the notices were insufficient under the statute.
For these reasons, I would affirm the decision of the Court of Appeals.
CAVANAGH and WEAVER, JJ., concurred with KELLY, J.

 MCL 600.2912b provides in part:
(4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
(a) The factual basis for the claim.
(b) The applicable standard of practice or care alleged by the claimant.
(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
*704 (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

 This conclusion is buttressed by statements in the statute’s Senate Legislative Analysis, SB 270, August 11, 1993, and House Legislative Analysis, HB 4403-4406, March 22, 2993.

 The complex nature of medical malpractice would deter the Legislature from requiring a high degree of specificity in notices of intent to sue. The Legislature is presumed to be aware of existing law. This includes judicial interpretations of statutes. See People v Schultz, 435 Mich 517, 543-544; 460 NW2d 505 (1990). That renders it more telling when the Legislature chose not to use the same or similar words here as it used in other instances when it wished to require detail.

 Ironically, this case highlights why the Legislature did not require a detailed statement. A potential defendant is under no obligation to challenge upon its receipt the sufficiency of the notice of intent to sue. Roberts I. The plaintiff, while awaiting the defendant’s response, cannot be assured that the notice is legally sufficient. If its sufficiency should he challenged and found to be deficient only after a lawsuit has been filed, the period of limitations likely will have expired on the claim. I believe that the Legislature did not intend to impose particularized requirements on an injured party who is effectively immobilized until either the defendant responds or the waiting period elapses.