## DE HAAN *v.* WINTER.

1. PLEADING—AMENDMENT—MALPRACTICE—DELAY.
   In action for malpractice by declaration without allegation excusing delay for more than two years, there was no error in granting leave to amend (3 Comp. Laws 1929, § 13983).

2. PHYSICIANS AND SURGEONS—MALPRACTICE—FRAUDULENT CONCEALMENT OF CAUSE OF ACTION.
   Fraudulent concealment of cause of action for malpractice means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing right of action (3 Comp. Laws 1929, § 13983).

3. LIMITATION OF ACTIONS—MALPRACTICE—TOLLING OF STATUTE.
   Statute of limitations did not commence to run against right of action for malpractice in treating broken leg as long as treatment of fracture continued (3 Comp. Laws 1929, § 13983).

4. PHYSICIANS AND SURGEONS—MALPRACTICE.
   Failure to give needed continued care and treatment, under opportunity and obligation to do so, would constitute malpractice.

As to what are proper care and skill, see annotation in 11 L. R. A. 700; 37 L. R. A. 835.
On scientific books and treatises as evidence, see annotation in 40 L. R. A. 553.

5. SAME—LIMITATION OF ACTIONS.

During course of treatment of broken leg, plaintiff was not put to inquiry relative to treatment accorded him, in respect to his right of action for malpractice.

6. LIMITATION OF ACTIONS—MALPRACTICE—TOLLING OF STATUTE.

If physician, who was employed February 3, 1927, to treat broken leg, bandaged leg in February, 1929, action for malpractice commenced November 15, 1929, was not barred by two-year statute of limitations (3 Comp. Laws 1929, §§ 13976, 13983).

7. EVIDENCE—EXPERT MUST ASSUME TRUTH OF FACTS STATED IN HYPOTHETICAL QUESTION.

Expert witnesses in answering hypothetical question must assume that facts stated therein are true.

8. TRIAL—INSTRUCTION—HYPOTHETICAL QUESTION—ANSWER SHOULD BE DISREGARDED WHERE ASSERTED FACTS FOUND UNTRUE.

Requested instruction that, if jury found that evidence fails to establish truth of asserted facts in hypothetical question, then they could not consider answer of expert witness but must entirely disregard it, should have been given.

9. EVIDENCE—HYPOTHETICAL QUESTION—WHERE ONE OF ASSUMED FACTS FOUND UNTRUE ANSWER SHOULD BE DISREGARDED.

That expert witnesses later expressed opinions upon all elements in hypothetical question in respect to improper treatment of broken leg did not save their answer for jury's consideration, where one of assumed facts was found untrue.

10. PHYSICIANS AND SURGEONS—MALPRACTICE—EXHIBITING INJURED LEG.

In action for malpractice in treating broken leg, it was proper to exhibit injured leg to jury.

11. SAME—REPEATED SHOWING OF INJURED LIMB.

Objection, in action for malpractice, that injured leg was repeatedly and unnecessarily exhibited to jury, held, without merit.

12. SAME—TRIAL—CROSS-EXAMINATION—EVIDENCE.

Counsel may not cross-examine medical witness as to whether certain text-book is standard medical work, and then, on his admission that it is, ask what it states on specific subject for purpose of producing impression that it disputes him, but if witness refers to text-book as his authority, then book referred to may be used to contradict him.

13. Evidence—Conclusion of Witness.
   While, in action for malpractice in treating broken leg, expert
   witness could state that alleged malpractice might cause bow
   in leg, it was error to permit him to state what, in his opin-
   ion, was proximate cause of bow in leg, since that invaded
   province of jury.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted January 12, 1932. (Docket No. 76, Calendar
No. 36,191.) Decided April 4, 1932.

Case by Edward De Haan against William G.
Winter for malpractice. Verdict and judgment for
plaintiff. Defendant appeals. Reversed, and new
trial granted.

*Leo W. Hoffman, Clare E. Hoffman,* and *Paul E.
Cholette,* for plaintiff.

*L. W. Harrington* and *Diekema, Cross & Ten Cate,*
for defendant.

Wiest, J. This is an action against a physician to·
recover damages for alleged malpractice in setting
and treating plaintiff's broken leg.

November 30, 1926, both bones of plaintiff's left leg
were broken about eight inches above the ankle. He
employed a physician, not defendant, and was under
his care for 10 weeks. February 3, 1927, plaintiff
employed defendant, and an X-ray examination dis-
closed that the bones were not in apposition but the
broken ends passed for some inches. Defendant
made an incision in the leg, prepared and aligned the
bones in proper manner, sutured them with catgut
and encased the leg in a plaster cast. Up to such
point the treatment was proper, but, it is alleged,
malpractice followed in not taking X-ray pictures of
the condition during the curative process, in not em-

ploying traction or extension weights, and in placing a pillow just back of the heel, raising the foot several inches, without support under the injured leg. Plaintiff's leg is now bowed backward, there has been union of the small bone but only union in part of the large bone, and the leg is weak.

This suit was brought November 15, 1929, by declaration, without allegation excusing delay for more than two years. The statute, 3 Comp. Laws 1929, § 13976, provides that an action for malpractice of a physician or surgeon shall be brought within two years from the time the cause of action accrues. Section 13983, 3 Comp. Laws 1929, provides, however, that if the cause of action is fraudulently concealed by the physician the action may be commenced within two years after discovery.

Defendant moved to dismiss, and plaintiff asked and was granted leave to amend. There was no error in granting such leave. The amended declaration, however, did not sufficiently allege, neither did the proofs at the trial show, the essential elements of fraudulent concealment of plaintiff's cause of action. Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent.

When did plaintiff's cause of action accrue? Until treatment of the fracture ceased the relation of patient and physician continued, and the statute of limitations did not run. *Schmit* v. *Esser,* 183 Minn. 354 (236 N. W. 622), and reported with annotations in 74 A. L. R. 1312. While decisions are not in accord upon this question, we are satisfied that in such an action as this the statute of limitations does not commence to run while treatment of the fracture continues. Failure to give needed continued care

and treatment, under opportunity and obligation to do so, would constitute malpractice. During the course of treatment plaintiff was not put to inquiry relative to the treatment accorded him.

Plaintiff testified that about a week before defendant took an X-ray picture of his leg on February 19, 1929, the defendant placed a bandage around his injured leg and before that he had repeatedly visited the defendant's office relative to his leg and the pain it was causing him, and defendant had given him capsules to ease the pain, and assured him that it would take time to perfect a cure. If defendant bandaged the injured leg in February, 1929, then this suit, commenced November 15, 1929, was not barred by the statute of limitations. The court so instructed the jury.

Plaintiff claimed that, when the defendant performed the operation and placed the leg in a plaster cast, a pillow was placed under or just above the heel, with no support under the encased leg. In a hypothetical question to plaintiff's experts this was included as a fact. The experts had to assume that it was true. The jury, in answer to a special question, found that it was not true.

Defendant requested the court to instruct the jury:

"You are instructed that an expert witness, in answering a hypothetical question, assumes as true every asserted fact stated in the question. I, therefore, instruct you that if you find that the evidence fails to establish the truth of the asserted facts in the hypothetical question, then you cannot consider the answer of the expert to that hypothetical question, but must disregard such answer."

The court instructed the jury:

"An expert witness, in answering a hypothetical question, assumes as true every asserted fact stated in the question."

The requested instruction should have been given. *Turnbull* v. *Richardson,* 69 Mich. 400; *Ballance* v. *Dunnington,* 241 Mich. 383 (57 A. L. R. 262). In the latter case we said:

"It should be remembered that an expert witness, in answering a hypothetical question, must accept as true every asserted fact stated therein, but the jury cannot consider the answer of the expert unless they find the evidence establishes the truth of all such asserted facts."

Counsel for plaintiff contend that:

"Presumably the jury followed the instructions given them to the effect that an expert must assume the statements in the hypothetical question to be true and disregarded that portion of the doctor's answer. Counsel's argument, answered at its face value, means that, in any case where a hypothetical question is asked and where special questions are submitted and it appears, from the answer to these questions, that one of the elements stated in the hypothetical question is not true, it follows that there is nothing for the jury to consider. The statement of the proposition carries its own refutation."

The fact of support, just above the heel and no support under the encased leg, was one allegation of negligent treatment, and the expert witnesses for plaintiff accepted this as evidence of malpractice. When the jury, in answer to a special question, found such assumed fact to be untrue, it was their duty to disregard entirely answers to the hypothetical question. The expert witnesses pointed out that malpractice consisted in failure to take an X-ray picture, failure to apply traction, and the negligent act in placing a pillow just above the heel without other support to the leg. Want of support was accepted by the experts as of moment in giving

their opinions upon the subject of improper treatment, and the fact that later they expressed opinions upon each element of want of care did not save the hypothetical question for consideration by the jury.

It is claimed that plaintiff repeatedly and unnecessarily exhibited his injured leg to the jury. It was proper to exhibit the leg, and we cannot find that there was prejudicial exhibition thereof.

Counsel for plaintiff, in examining defendant's experts, had a medical work on the table, but did not read therefrom, although he did ask about certain medical text-books, and got before the jury, at least, the impression that the book in court disputed the witness.

The trial judge ruled:

"Is not this the rule, that when the doctor states it is a standard medical work, he may then ask the doctor whether or not that standard medical work does not (state) so and so, is not that a proper question?"

Such is not the rule. If a medical witness refers to a text-book as his authority, then the book referred to may be used to contradict him. *Marshall v. Brown,* 50 Mich. 148; *People v. Millard,* 53 Mich. 63; *Hall v. Murdock,* 114 Mich. 233; *Foley v. Railway Co.,* 157 Mich. 67; *Sykes v. Village of Portland,* 193 Mich. 86; *People v. McKernan,* 236 Mich. 226.

The court was in error in overruling the objection to the following question to one of the experts in behalf of plaintiff:

"Doctor, I will ask you this question: I want to save the time, but will try to get it in the form so that it is permissible. Assuming the facts to be true that I have stated in my hypothetical question, what is your opinion as to the cause, the proximate cause, of the bow in that leg?"

This invaded the province of the jury. As far as the expert could go was to state that the alleged malpractice of defendant might cause the bow in the leg.

The ultimate issue of fact for determination by the jury was whether malpractice of defendant caused the condition complained of by plaintiff. In *Jones* v. *Village of Portland,* 88 Mich. 598, 613 (16 L. R. A. 437), a similar question was asked an expert witness. We quote:

" '*Q.* Taking into consideration simply these things that were asked you on this question, to what would you attribute the condition that you found the patient in at the time of your examination?'

"This was objected to as incompetent.

" '*The Court:* I am inclined to think that is proper. Leaving out now everything except what was stated to you in this hypothetical question, then what, in your judgment, caused the condition in which you found her.' "

The court held:

"This was improper. It was usurping the province of the jury. The witness was permitted to testify to a conclusion, contrary to our own decisions. *Dundas* v. *City of Lansing,* 75 Mich. 499 (5 L. R. A. 143, 13 Am. St. Rep. 457); *Tice* v. *Bay City,* 78 Mich. 209."

The judgment is reversed, and a new trial ordered, with costs to defendant.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, FEAD, and BUTZEL, JJ., concurred with WIEST, J. NORTH, J., concurred in the result.