KEMP v. ALDRICH.

ON REHEARING.

1. EVIDENCE — EXPERT OPINION — CONJECTURE — INSTRUCTIONS —
ARTHRITIC CONDITION.

In action for personal injuries received in accident which occurred
February 27, 1936, admission of testimony of physician who
had examined plaintiff several times during two months previ-
ous to accident but not thereafter until March 23, 1937, that,
in his opinion, her rheumatic or arthritic condition at base of
spine at later date could have been caused by the accident and
recognition of such testimony by court in his instruction to jury
although court had, on its own motion, stricken testimony of
her attending physician that no complaint had been made to
him of any abnormal spinal condition *held*, reversible error,
where no hypothetical questions based upon facts in evidence
were propounded to first doctor from which he could have given
an expert opinion and jury was thereby allowed to speculate
as to the cause of plaintiff's arthritic condition.

2. SAME—PROBATIVE EVIDENCE—THEORIES.

Probative evidence must be something more tangible than a mere
pyramiding of theories.

Appeal from Isabella; Hart (Ray), J. Submitted
June 9, 1938. (Docket No. 56, Calendar No. 39,860.)
Decided December 21, 1938. Submitted on rehearing
April 4, 1939. Decided June 5, 1939.

Case by Verna Kemp against William Aldrich,
Shepard Co-operative Association, a Michigan cor-
poration, and Ernest E. Ardner for damages for
personal injuries sustained when struck by a truck.

Verdict and judgment for plaintiff. Defendants appeal. Reversed and new trial granted on rehearing.

*Campbell & Campbell* (*James E. Ryan,* of counsel), for plaintiff.

*Charles H. Goggin* and *Robert H. Baker* (*Virgil McClintic* and *Byron L. Ballard,* of counsel), for defendants.

### On Rehearing.

Sharpe, J. The facts in this case are reported in 286 Mich. 591, to which reference is made. We there held that the contributory negligence of plaintiff and the negligence of defendants was a jury question and we now reaffirm that holding.

During the trial of the case at bar, plaintiff called Dr. DuBois and Dr. McArthur as witnesses. Dr. McArthur was plaintiff's attending physician. He testified that he took X-ray pictures of her ankles and knees. He flexed her knees and inquired of all her complaints. He testified that she had made a complete and normal recovery except that she had a stiff ankle. She made no complaint to him of spinal or throat trouble or of any pain in her knees. Her only complaint was of some pain or discomfort in the muscular tissues of the left leg, due to favoring her right ankle. He found no limitation of motion of the right knee, nor evidence of an arthritic condition of either knee, in his examination. He also testified:

"*Q.* Now, at that time, did she make any complaints to you of any spinal condition?

"*A.* No, she made no complaint of any spinal condition.

"*Q.* And whether or not she made any complaint to you of any condition of the throat?

"*A.* Of the throat?

"*Q.*  Yes, sir.

"*A.*  No.

"*Q.*  You examined this lady on the 27th of March (1937), didn't you?

"*A.*  That is right. * * *

"*Q.*  You say she made no complaint to you about spinal or throat trouble?

"*A.*  No. * * *

"*Q.*  You made no examination of her spine last Saturday at your hospital?

"*A.*  No, there was no complaint of the spine."

There was no objection by plaintiff's counsel to any of Dr. McArthur's testimony elicited upon cross-examination, nor was there any motion to strike his testimony. At the close of the proofs, the court, on his own motion, struck all this portion of Dr. McArthur's testimony from the record.

"*The Court:*  I think one thing that was objected to was the time relative to the spinal examination that the doctor said there were no injuries to the spine. I think the court should strike that testimony out relative to injuries to the spine.

"*Mr. Ryan:*  You mean as to the testimony of Dr. McArthur as to injuries to the spine? All right, because he made no examination of it.

"*The Court:*  I thought he did.

"*Mr. Ryan:*  No, he said when she was there a week ago she made another complaint and he only examined as to the portion that she complained about at that time, and his examination only took about 10 minutes, but Dr. DuBois examined her as to the spine and found trouble there.

"*The Court:*  I think that is right."

Dr. DuBois, a witness called by plaintiff, testified as follows:

"*Q.*  And from your complete physical examination of her, what did you find?

"*Mr. Goggin:* I object; the accident occurred February 27, 1936; this man's examination of her on March 23, 1937, without any evidence that he knows what her condition was at the time of the accident, or what her condition has been at any time since the accident, or that he knows anything but what he found on that day—

"*The Court:* Did you examine her before March 23, 1937?

"*A.* In 1936 I did; probably four or five times in January, February, 1936, prior to her accident.

"*The Court:* Have you examined her since her accident relative to her condition?

"*A.* On March 23, 1937.

"*The Court:* I will allow him to state her condition.

"*Mr. Goggin:* I want my objection on record.

"*The Court:* Subject to your objection.

"*The Witness:* In my examination on March 23, 1937, I found evidence of an injury to her right leg; I found some abnormal findings at the base of her spine, and of her knee. When I say abnormal findings at the base of her spine, I mean she had an evidence of a rheumatic or arthritic condition.

"*Q.* And what was the cause of such condition?

"*Mr. Goggin:* I object; and I still claim that a man that examined her a year afterwards, without knowing anything about her medical history whatever, and doesn't show that the conditions he is testifying to are the result of the accident; until they show the condition is the result of this accident, this examination is absolutely incompetent, irrelevant and immaterial.

"*Q.* My question is, what will cause this arthritic condition you found there?

"*Mr. Goggin:* I object to that.

"*The Court:* He may answer.

"*A.* There are a variety of causes, either infections or injuries."

The court, in its charge to the jury, made use of the DuBois testimony as follows:

"She was afterwards brought to the hospital here in Mt. Pleasant, and doctored for her injuries, and she claims that she suffered great pain because of the broken legs, and the broken ankle, and the injuries to her back and chin, and brings this suit to compensate her, or to recover damages for the injuries which she sustained, and which she claims were caused by the negligence, the negligent operation of the truck by the defendant Aldrich. * * * If you should grant the plaintiff damages, she is entitled to them by reason of the pain and suffering she has endured, and the pain and suffering she will endure in the future, based upon the evidence in the case, and for injuries which she has received."

Defendants contend that the admission of the testimony of Dr. DuBois, the voluntary striking out of certain testimony of Dr. McArthur on the part of the trial judge, and the subsequent instruction of the court to the jury above-mentioned were prejudicial to the interests of the defendants. As we examine the testimony of Dr. DuBois, we find that he testified that plaintiff was suffering from a rheumatic or arthritic condition, and that this condition may come from a variety of causes, i. e., from infection or from injuries. Under the authority of DeHann v. Winter, 258 Mich. 293, Dr. DuBois could not give an opinion that the arthritic condition was caused by the accident, nor do we find that any hypothetical questions based upon facts in evidence were propounded to Dr. DuBois from which he could have given an expert opinion. Under the facts in this case the jury was allowed to speculate as to the cause of plaintiff's arthritic condition.

In *Ford* v. *Nicol,* 261 Mich. 307, we said:

"The testimony did not disclose evidentiary facts. The expert had but a theory that plaintiff was sterile because she did not become pregnant; that she did not become pregnant because of lack of ovulation; that lack of ovulation was because of shock to her nervous system. Probative evidence must be something more tangible than a mere pyramiding of theories. The witness gave no satisfactory data upon which to base his conjectures."

Under such circumstances the admission of such testimony and the charge of the court thereon were prejudicial to defendants.

The judgment is reversed and a new trial granted. Defendants may recover costs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.