**Michigan Supreme Court**
**Lansing, Michigan 48909**

Chief Justice
Elizabeth A. Weaver

Justices
Michael F. Cavanagh
Marilyn Kelly
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# Opinion

**FILED JANUARY 3, 2001**

MARTIN I. LEVY and
MARTIN I. LEVY, D.D.S., P.C.,

    Plaintiffs-Appellants,

v

No. 115603

MARK L. MARTIN, GERALD HOSKOW,
and HOSKOW & MARTIN, P.C.,

    Defendants-Appellees.

_____

PER CURIAM

    The plaintiffs filed a malpractice action that the circuit court dismissed on the ground that the limitation period had expired. The Court of Appeals affirmed. Because we agree with the plaintiffs that their suit was timely, we reverse in part the judgments of the circuit court and the Court of Appeals.

I

    From 1974 until 1996, accountants Mark L. Martin and Gerald Hoskow[1] prepared the annual tax returns of Martin I.

---

[1] Messrs. Martin and Hoskow were principals in an accounting firm that bore their names. In this opinion, when we refer to them, we also mean their firm.

Levy, D.D.S.[2]  As the result of an audit by the Internal Revenue Service, Dr. Levy was required to pay additional taxes for 1991 and 1992, as well as penalties and interest.[3]  He also incurred legal expenses and additional accounting expenses.[4]

In August 1997, Dr. Levy filed in circuit court a complaint in which he alleged that losses exceeding ninety thousand dollars had been caused by the malpractice of Messrs. Martin and Hoskow.[5]

The 1991 and 1992 tax returns of which Dr. Levy complained were prepared and submitted in 1992 and 1993, respectively.  Observing that the limitation period for a malpractice action is two years,[6] Messrs. Martin and Hoskow filed a motion to dismiss in lieu of an answer.[7]  The circuit

---

[2] Taxes were also prepared for Dr. Levy's professional corporation.  References to Dr. Levy include the corporation.

[3] In his application to this Court, Dr. Levy says he received a "notice of deficiency" form in December 1995 and that he settled with the IRS in March 1997, when stipulated orders were entered in two cases in the United States Tax Court.

[4] This case was dismissed by the circuit court before a trial or discovery.  For present purposes, we thus accept as true the plaintiffs' allegations.

[5] That allegation was contained in count I of the complaint, which was titled "Negligence & Professional Malpractice."  There also was a count II——"Negligent and Fraudulent Misrepresentation."

[6] MCL 600.5805(4); MSA 27A.5805(4).

[7] In their brief in support of the motion, Messrs. Martin and Hoskow relied on MCR 2.116(C)(7) and (8).

court agreed that the malpractice claim was not timely, and dismissed the complaint on that basis.[8]

The Court of Appeals affirmed.[9]  In a separate opinion, Judge WHITBECK dissented, expressing the belief that the malpractice claim had been filed timely.[10]

Dr. Levy has applied to this Court for leave to appeal.

## II

As indicated, the limitation period for a malpractice claim is two years.[11]  The present dispute concerns the date on which Dr. Levy's malpractice claim accrued, i.e., the date on which the two-year period began to run.

To resolve this issue, we turn to MCL 600.5838; MSA

---

[8] Actually, the court dismissed count I on that basis. The court also granted summary disposition on count II on the ground that the compliant did not contain specific allegations of fraud, and thus did not (except insofar as it reiterated the untimely malpractice claim) state a claim on which relief can be granted.

[9] Unpublished opinion per curiam issued September 17, 1999 (Docket No. 207797).

[10] Judge WHITBECK concurred in the affirmance of the summary disposition of count II.

[11] A malpractice claim is barred unless filed within the two-year period "or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later."  MCL 600.5838(2); MSA 27A.5838(2). In light of our disposition of this matter, it is unnecessary to consider whether the six-month discovery provision is applicable to this case.

27A.5838.[12]  That section[13] provides that a malpractice claim "accrues at the time that person discontinues serving the plaintiff in a professional . . . capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim."  MCL 600.5838(1); MSA 27A.5838(1).

In *Morgan v Taylor*, 434 Mich 180; 451 NW2d 852 (1990), this Court explained this "last treatment rule," from its development in *De Haan v Winter*, 258 Mich 293, 296-297; 241 NW

---

[12] Questions of statutory interpretation are decided de novo.  *Northern Concrete Pipe, Inc v Sinacola Cos——Midwest, Inc*, 461 Mich 316, 320, n 14; 603 NW2d 257 (1999).

[13]

(1) Except as otherwise provided in [MCL 600.5838a; MSA 27A.5838(1), which concerns medical malpractice], a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

(2) Except as otherwise provided in [MCL 600.5838a; MSA 27A.5838(1), which concerns medical malpractice], an action involving a claim based on malpractice may be commenced at any time within the [two-year limitation period of MCL 600.5805(4); MSA 27A.5805(4)], or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.  The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff.  A malpractice action which is not commenced within the time prescribed by this subsection is barred.

4

923 (1932), through the subsequent codification in MCL 600.5838; MSA 27A.5838 and the statutory amendments enacted as 1986 PA 178.

The plaintiffs in *Morgan* filed two complaints in 1985, alleging malpractice in connection with a 1981 optometric examination. An examination also had been conducted in 1983, less than two years before the complaints were filed, and the issue in *Morgan* was whether "routine, periodic examinations" extend the limitation period. Resolving the question, this Court wrote:

> In the instant case defendant argues that the rationale underlying the last treatment rule does not apply in the context of routine, periodic examinations. It is contended that there is no air of truthfulness and trust once the examination is concluded. We disagree. It is the doctor's assurance upon completion of the periodic examination that the patient is in good health which induces the patient to take no further action other than scheduling the next periodic examination.
>
> Particularly in light of the contractual arrangement which bound defendant and entitled plaintiff to periodic eye examinations,[14] it cannot be said that the relationship between plaintiff and defendant terminated after each visit. The obligation and responsibility of defendant to provide glaucoma testing extended beyond the 1981 examination of plaintiff's eyes. We conclude that defendant did not discontinue "treating or otherwise serving"[15] plaintiff "as to the matters

---

[14] The patient in *Morgan* was entitled, under a contract between his employer and his labor union, to an eye examination every two years.

[15] As one can see in footnote 13, the statute is now framed only in terms of "serving" the plaintiff. That change is related to the Legislature's decision to eliminate the last

out of which the claim for malpractice arose" until August 18, 1983. Thus, we hold that the claim of plaintiff is not barred by the statute of limitations.[19]

Since the facts here are unique, and the Legislature has now repealed the last treatment rule as it applied to medical malpractice,[16] we limit our holding to the facts of this case.

_____

[19] There is no suggestion that this plaintiff returned to [the optometrist] on August 18, 1983, merely to extend the statutory period of limitations. Our decision might be different if there were evidence that such a visit had been made as a mere artifice to extend the limitations period.

_____

[434 Mich 194.]

### III

In the present case, the Court of Appeals said that "[t]he preparation of yearly tax returns is not analogous to the periodic eye examinations in *Morgan v Taylor,* 434 Mich 180; 451 NW2d 852 (1990)," since "[e]ach individual tax return reflects the examination of a discrete, contained body of information."

Writing in dissent, Judge WHITBECK disagreed about the applicability of *Morgan*. He countered that its analysis of the statute was "instructive and, in appropriate circumstances, controlling." He continued with an analysis that we find persuasive, and adopt as our own:

_____

treatment rule with respect to medical malpractice claims. See *Morgan*, 434 Mich 192, n 17, and MCL 600.5838(1); MSA 27A.5838(1) and MCL 600.5838a; MSA 27A.5838(1) as amended and enacted, respectively, by 1986 PA 178.

[16] See footnote 15.

6

I consider a faithful application of the legal principles enunciated in *Morgan* to control the issue at hand. A health professional and patient on the one hand are similarly situated in this regard to an accountant who provides annual income tax preparation services and the accountant's client. As, under the rationale of the last treatment rule, a patient was (before the amendment of § 5838[1] making it inapplicable to medical malpractice claims) entitled to rely "completely" on the health professional and not inquire into the effectiveness of the health professional's measures prior to the termination of the relationship, an accountant's client is likewise entitled to rely "completely" on the account's [sic: accountant's] skills and effectiveness until the termination of the relationship. A patient who attended a periodic examination and was not diagnosed with any medical problem was under the rationale of the last treatment rule provided with an "assurance" of good health that induced the patient to take no further action to investigate the pertinent health matters until the next periodic examination. Likewise, a client who entrusts preparation of annual tax returns to an accountant is provided with an assurance of professional preparation of the tax returns that induces the client to take no further action regarding those matters until it is time to prepare the next year's tax returns. As discussed above, accepting the well-pleaded allegations of the complaint as true, [*Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 212 Mich App 522, 527-528; 538 NW2d 424 (1995)], defendants prepared annual tax returns for plaintiffs from 1974 until 1996——encompassing the times of the alleged professional negligence in preparing the 1991 and 1992 tax returns. Thus, I conclude that, based on the well-pleaded allegations of plaintiffs' complaint, under the last treatment rule of § 5838(1) as explained in *Morgan*, plaintiffs' possible claim did not accrue——meaning the statute of limitations did not begin to run——until at least 1996. The complaint in this case was filed in 1997 and thus was plainly within the applicable limitation period, which was two years as noted by the majority. Thus, in my view, the trial court erred by granting summary disposition in favor of defendants under MCR 2.116(C)(7) based on the statute of limitations.

I respectfully disagree with the majority's

7

attempt to distinguish the "continuing care of one patient's set of eyes in *Morgan, supra,*" from what the majority describes as "the series of unrelated tax calculations in this case." . . . The touchstone of the analysis in *Morgan* was *the continuing professional relationship* between a professional and the person receiving the professional's services with regard to a particular subject matter, not any direct connection between the work performed by the professional at continuing periodic sessions during that relationship. The alleged negligence in *Morgan* occurred during a glaucoma test on the principal plaintiff in *Morgan* at a 1981 eye examination. *Morgan, supra* at 182-183. The principal plaintiff in *Morgan* did not return to the defendant optical company for an examination until 1983 for his next routine eye examination. *Id.* at 182. There is no indication in *Morgan* that the manner in which the eye examination was conducted in 1983 had any direct connection to the performance of the 1981 glaucoma test. Nevertheless, the *Morgan* Court concluded that, due to the statutory "last treatment" rule, the statute of limitations with regard to alleged negligence in the 1981 glaucoma test did not begin to run on the date it was performed because of the continuing professional relationship between the patient and the optical company.

Similarly, in this case, plaintiff s' complaint alleges, without any contrary documentary evidence in the record, the existence of a continuing relationship of tax preparer and client that did not end until 1996. Until the end of that relationship, for purposes of applying the "last treatment" rule and thereby ascertaining whether the statute of limitations bars this suit, plaintiffs had "no duty to inquire into the effectiveness of [defendants'] measures" until the end of the professional relationship. *Id.* at 188 (citation omitted).[3]

I note that it may (or may not) be wise for MCL 600.5838(1); MSA 27A.5838(1) to be amended to completely abolish the "last treatment" rule. However, "[t]he wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which the courts may not interfere." *Morgan, supra* at 192, quoting *Melia v Employment Security Comm,* 346 Mich 544,

8

561; 78 NW2d 273 (1956). Our duty is to faithfully apply the legislatively adopted policy of the "last treatment" rule to claims of professional malpractice, other than medical malpractice, not to attempt to limit that policy by an unduly narrow application.

_____

[3] However, I further question the majority's apparent view of the preparation of each year's tax returns as inherently involving a completely separate transaction on the basis of "common sense." Depending on its complexity and the tax situation of the taxpayer, a given tax return may (or may not) reflect "the examination of a discrete, contained body of information." I think it is fairly well recognized, for example, that, especially with regard to business income taxation, certain matters such as depreciation of business assets and eligibility for certain tax credits often depend on facts that extend further into the past than the prior tax year. Thus, from the current state of the record, it is not clear that each instance of preparation of annual income tax returns by defendants involved calculations and judgments that lacked any direct connection to their preparation of income tax returns in prior years.

_____

[Emphasis in original.]

We respectfully disagree with the dissent's assertion that this case should be distinguished from *Morgan* on the ground that *Morgan* involved the continuing treatment of the same set of eyes while this case involves discrete tax calculations. The basis for our disagreement comes from a review of the development of the last treatment rule in Michigan.

Over six decades ago, in *De Hann, supra* at 296-297, this Court applied the common-law last treatment rule in holding that a patient's claim of professional malpractice for treatment of a fracture in his leg did not commence to run "while treatment of the fracture continues" as "[d]uring the course of treatment plaintiff was not put to inquiry relative to the treatment accorded him." Thereafter, codifying what it

9

wished to have as the last treatment rule, the Legislature, as part of the Revised Judicature Act, enacted MCL 600.5838; MSA 27A.5838 in its original form:[17]

> A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or psuedo-professional capacity as to the matters out of which the claim for malpractice arose.

This statute constituted not only a codification, but also an expansion of the common-law last treatment rule. First, the statute expanded the common-law rule because it applied to a "member of a state licensed profession" meaning that the last treatment rule was extended not just to medically licensed, but to nonmedical state licensed professionals. Moreover, the statutory language "discontinues treating or otherwise serving the plaintiff . . . as to the matters out of which the claim for malpractice arose" extended the last treatment rule of *De Haan* to maters other than treating a specific recognized injury. How broadly to read "the matters out of which the claim for malpractice arose" was addressed by this Court in *Morgan*. There, unlike the situation in *De Haan*, the plaintiff was not receiving treatment for a specific ailment, but rather was receiving periodic eye examinations from the defendants. This Court held that it was those examinations, not any

---

[17] The current version of MCL 600.5838(1); MSA 27A.5838(1) is substantively the same, except for its exclusion of claims of medical malpractice from its provisions.

injury, that constituted "the matters out of which the claim for malpractice arose."[18]  Using the same reasoning, it is clear here that plaintiffs, rather than receiving professional advice for a specific problem, were receiving generalized tax preparation services from defendants.  These continuing services, just like the continuous eye examinations in *Morgan*, to be consistent with the *Morgan* approach, must be held to constitute "the matters out of which the claim for malpractice arose."[19]

---

[18]  While not articulated in *Morgan*, we note that its result seems to find support in the statute's use of the plural term "matters" in the phrase "the matters out of which the claim for malpractice arose."  Plainly, this means that the statute of limitations for a nonmedical malpractice claim against a state licensed professional does not begin to run when the professional has ceased providing services with regard to a single matter.  On the contrary, the statute of limitations begins to run only when the professional has ceased providing services as to the broad "matters" out of which the claim arises.  This indicates that a continuing course of eye examinations (or preparation of income tax returns) should be considered the "matters" out of which a claim for malpractice arose for purposes of the statute, rather than considering the completion of each eye examination (or tax preparation) to begin running the statute of limitations with respect to negligence during that singular matter.  In addition, the phrase "discontinues serving" as used in MCL 600.5838; MSA 27A.5838 should not be ignored or overlooked.  Defendants in this case did not discontinue serving plaintiffs with regard to accounting matters until well after the preparation of the 1992 income tax returns.

[19] We note that we are reviewing this case in the context of a motion for summary disposition brought by defendants under MCR 2.116(C)(7) based on the statute of limitations.  In bringing such a motion, a defendant may, but is not required to, submit documentary evidence in support of its assertion that a claim is barred by the statute of limitations.  See *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994).

However, in the present case, defendants have not offered

11

Finally, the dissent raises the specter of a very long delayed claim being possible under MCL 600.5838(1); MSA 27A.5838(1) based on the rationale of this opinion. Slip op at 11. It is certainly true that the last treatment rule as codified and expanded by MCL 600.5838(1); MSA 27A.5838(1) may allow suits against non-medical professionals based on alleged negligence that has occurred much farther in the past than would be the case absent that statutory provision. However, for better or worse, we believe that such an extended statute of limitations is precisely the point of MCL 600.5838(1); MSA 27A.5838(1) as currently enacted. Policy arguments for changing the statute may be addressed to the Legislature, but we must endeavor to apply the statute in light of its plain

---

documentary evidence regarding the nature of the professional services that were provided by defendants to plaintiffs. As Judge WHITBECK stated below, in the absence of any documentary evidence on a point, in reviewing a summary disposition motion under MCR 2.116(C)(7) we must accept the well-pleaded allegations in a complaint as true. Plaintiffs alleged that defendants prepared their income tax returns from 1974 to 1996. Defendants have failed to present any evidence that this is untrue—or that each income tax preparation was a discrete transaction that should be considered to separately constitute "the matters out of which the claim for malpractice arose," MCL 600.5838(1); MSA 27A.5838(1), for purposes of the last treatment rule. Accordingly, we conclude that defendants have not established that plaintiffs' claims are barred by the statute of limitations. We note that the result may have been different if defendants had come forward with documentary evidence that each annual income tax preparation was a discrete transaction that was in no way interrelated with other transactions. Accordingly, this opinion does not mean, for example, that if an accountant prepared income tax returns for a party annually over a period of decades, the statute of limitations for alleged negligence in preparing the first of these tax returns would not run until the overall professional relationship ended.

12

language, well-established principles of statutory construction, and this Court's prior construction of the statute in *Morgan*.[20]

For these reasons, we reverse in part the judgments of the circuit court and the Court of Appeals.[21] We remand this case to the circuit court for further proceedings on the plaintiffs' malpractice claim against the defendants. MCR 7.302(F)(1).

KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

CAVANAGH, J., concurred in the result only.

---

[20] It is to be recalled that neither the majority nor the dissent challenges the soundness of the *Morgan* rationale.

[21] We have reviewed the plaintiffs' other claims on appeal, including his contention that the circuit court erred in granting summary disposition on count II of the complaint, and we are not persuaded that additional relief should be granted.

S T A T E   O F   M I C H I G A N

SUPREME COURT


MARTIN I. LEVY and
MARTIN I. LEVY, DDS, P.C.,

    Plaintiffs-Appellants,

v                                    No.  115603

MARK L. MARTIN, GERALD HOSKOW,
and HOSKOW & MARTIN, P.C.,

    Defendants-Appellees.

_____


MARKMAN, J.  (*dissenting*).

I respectfully disagree with and dissent from the majority's conclusion that the "last treatment" rule served to keep plaintiff's professional malpractice action viable in this case.[1]  Rather, I believe that the Court of Appeals correctly affirmed the trial court's grant of summary disposition in defendants' favor.

From the very limited record in this case, it appears that defendants were hired by plaintiffs to act as their personal and corporate accountants.  Defendants prepared plaintiffs' annual tax returns for the years 1974 through

---

[1]  I concur with the majority's determination that plaintiff's other claims on appeal are not worthy of additional relief.

1996, a period of twenty-two years. Plaintiffs' 1991 and 1992 tax returns were audited by the Internal Revenue Service (IRS) in 1994, with the IRS presenting plaintiffs with a notice of deficiency in December 1995. Plaintiffs subsequently filed a two-count complaint against defendants in August 1997, alleging professional negligence and fraud.

In lieu of answering plaintiffs' complaint, defendants filed a motion for summary disposition under MCR 2.116(C)(7) (expiration of the applicable limitation period) and (8) (failure to state a claim). The circuit court granted defendants' motion, and the Court of Appeals affirmed, with Judge WHITBECK dissenting.

This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, we review questions of statutory construction de novo as a matter of law. *Sands Appliance Services, Inc v Wilson,* 463 Mich 231, 238; 615 NW2d 241 (2000); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

The essential question in this case is: When did plaintiffs' claim of professional malpractice accrue for purposes of applying the pertinent limitation period? MCL 600.5805; MSA 27A.5805 provides that

> [a] person shall not bring or maintain an action to
> recover damages for injuries to persons or property
> unless, after the claim first accrued to the
> plaintiff or to someone through whom the plaintiff

2

claims, the action is commenced within the periods of time prescribed by this section.

* * *

(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

With regard to the time of accrual of a professional malpractice claim, other than one for medical malpractice,[2] MCL 600.5838(1); MSA 27A.5838(1) states that

a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity *as to the matters out of which the claim for malpractice arose,* regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [Emphasis added.]

An action involving a claim based on professional malpractice (other than medical malpractice) may be commenced at any time within the applicable period prescribed in MCL 600.5805(4); MSA 27A.5805(4), or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. MCL 600.5838(2); MSA 27A.5838(2). A malpractice action that is not commenced within the time prescribed by this subsection is barred. *Id.*

The cardinal rule of statutory construction is to identify and give effect to the intent of the Legislature.

_____

[2] The accrual of a medical malpractice claim is determined pursuant to MCL 600.5838a; MSA 27A.5838(1).

3

*Helder v Sruba,* 462 Mich 92, 99; 611 NW2d 309 (2000). The first step in discerning intent is to examine the language of the statute. *Id.* If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Western Michigan Univ Bd of Control v Michigan,* 455 Mich 531, 538; 565 NW2d 828 (1997). "Each word of a statute is presumed to be used for a purpose, and, as far as possible, effect must be given to every clause and sentence." *Robinson v Detroit,* 462 Mich 439, 459; 613 NW2d 307 (2000).

In Michigan, the "last treatment" rule originated in *De Haan v Winter,* 258 Mich 293; 241 NW2D 923 (1932). At that time, the limitations statute contained no provision fixing the accrual point of a malpractice action. As in the present case, the *De Haan* Court was faced with the question:

> When did plaintiff's cause of action accrue? *Until treatment of the fracture ceased* the relation of patient and physician continued, and the statute of limitations did not run. [Citations omitted.] While decisions are not in accord upon this question, we are satisfied that in such an action as this the statute of limitations does not commence to run *while treatment of the fracture continues.* Failure to give needed continued care and treatment, under opportunity and obligation to do so, would constitute malpractice. *During the course of treatment* plaintiff was not put to inquiry relative to the treatment accorded him. [*Id.* at 296-297 (emphasis added).]

The legislative comment accompanying the 1961 enactment of § 5838, indicates that "[s]ection 5838 is based on the rule

4

stated and followed in the Michigan case of *De Haan*." *Morgan v Taylor,* 434 Mich 180, 187, n 13; 451 NW2d 852 (1990).[3]

"The rationale for the last treatment rule has been explained on grounds that the patient, *while his treatment continues*, 'relies completely on his physician and is under no duty to inquire into the effectiveness of the latter's measures.'" *Id.* at 187-188 (emphasis added). I believe it is important to reiterate the facts of *Morgan*, a medical malpractice case. In *Morgan*, the plaintiff was an employee of D.W. Zimmerman Company and a member of United Auto Workers (UAW) Local 417. Zimmerman and the UAW contracted with the defendant Cooperative Optical Services, Inc. (COS); under the contract, each covered employee was entitled to an eye examination every two years. The plaintiff received eye examinations by COS staff in 1976, 1978, and on March 7, 1981, and August 18, 1983. *Id.* at 182. During the plaintiff's March 1981 examination, a test for glaucoma indicated intraocular pressure beyond the normal range. However, the COS optometrist failed to take any further action. During the plaintiff's August 1983 examination, abnormal intraocular pressure was again detected and the plaintiff was referred to

---

[3]    The "last treatment" rule announced in *De Haan v Winter, supra* at 241, was codified in 1961 PA 236, the Revised Judicature Act of 1961, MCL 600.5838; MSA 27A.5838. The rule was later amended by 1975 PA 142, and later repealed, as to medical malpractice actions, by 1986 PA 178.

5

an ophthalmologist, who determined that the plaintiff had incurred irreversible nerve damage due to the abnormal pressure. *Id.* at 183. The plaintiff sued, and the trial court found that the August 1983 examination amounted to "a continuation of treatment or services" within the meaning of MCL 600.5838(1); MSA 27A.5838(1); thus, the plaintiff's claim of malpractice "was not barred by the statute of limitations because it had been filed within two years of the date the action accrued." *Id.* at 184.

In the present case, the majority relies on the Court of Appeals dissent, which in turn relied on this Court's analysis in *Morgan, supra*. Respectfully, I disagree with the dissent's assertion that "[t]he touchstone" of the "last treatment" rule is the "*continuing professional relationship* between a professional and the person receiving the professional's services . . . ." Unpublished opinion per curiam, issued September 17, 1999 (Docket No. 207797)(WHITBECK, J., concurring in part and dissenting in part), slip op at 4 (emphasis in the original).

The plain language of subsection 5838(1) does *not* state that a claim of professional malpractice accrues on the last date of service (i.e., "last date of treatment"), period. Rather, the statutory language clearly defines the point of accrual, confining the last date of service expressly to those matters "*out of which the claim for malpractice arose*"; from

6

this language, certainly, a professional relationship may continue on *even though* a malpractice claim arising out of that relationship has accrued and the clock has started to run with regard to the two-year limitation period. The Court of Appeals dissent and the majority's adoption of the dissent's analysis without explanation fail to acknowledge and give effect to the plain language of the *entire* sentence comprising subsection 5838(1), thereby rendering the modifying phrase "matters out of which the claim for malpractice arose" superfluous.

The majority asserts that, in enacting § 5838, the Legislature "extended" or "expanded" upon the common-law "last treatment" rule set forth in *De Haan.* See slip op at 10. However, in my judgment, the legislative comment that § 5838 "is based on the rule stated and followed in the Michigan case of *De Haan*" effectively militates *against* the majority's assertion. The facts in *De Haan* involved a distinct period of medical treatment, relating to a distinct medical condition, with this Court concluding that a claim of professional malpractice, arising "[d]uring the course of [that] treatment," would not be barred by the limitation period as long as that *particular* course of treatment, for that *particular* medical condition, continued. *Id.* at 297. Specifically*, De Haan* did not determine that once the treatment of the plaintiff's fracture ceased, his claim of

7

professional malpractice, arising out of the treatment for the fracture, remained viable as long as a physician-patient relation continued.

The phrase "as to the matters out of which the claim for malpractice arose," found in subsection 5838(1), clearly equates with the phrases "[u]ntil treatment of the fracture ceased" and "[d]uring the course of treatment" found in *De Haan.  Id*. at 296, 297.  Moreover, *Morgan* refers to the *De Haan* language "while . . . treatment continues" in attempting to explain the rationale for the "last treatment" rule.  434 Mich 187.  Importantly, this Court, in determining that the facts of *Morgan* were "unique," *limited* its holding to the facts of that case.  *Id.* at 194.  Thus, I can discern no logical force to the suggestion that the Legislature intended to broaden the common-law "last treatment" rule, as stated and applied in *De Haan,* when it drafted the language of § 5838.

Further, the facts in the present case, although very sparse for purposes of appellate review, are nevertheless quite distinguishable from the facts found in *Morgan, supra.* In *Morgan,* there was a requirement under an employer/union contract that the plaintiff be given an opportunity to have his eyes examined and reevaluated every two years.[4]  Granted,

---

[4]  I find the existence of a contractual agreement in *Morgan* a highly distinguishable fact not present in the instant case.  I believe that this Court, in *Morgan,* also
(continued...)

8

there may have been changes that occurred in the plaintiff's eyes between visits, but it would be necessary to address these changes in the context of the condition of the plaintiff's *same* eyes, determined at the last visit and every visit before that. There was certainly an interrelation, even an interdependency, between one eye examination and the next because the *same* eyes were being examined each time.

However, plaintiffs' annual tax returns in the present case cannot be considered analogous to the plaintiff's eyes in *Morgan.* The preparation of annual tax returns involves the compilation and computation of a distinct and discrete body of information, generally not the same from year to year. In other words, in each successive year, a client is not bringing to his accountant the same aggregation of receipts to be reevaluated and reexamined, to discern if some change has taken place in that particular body of information and data. Rather, the client generally brings in a new aggregation of receipts specific and distinct to the year for which the tax return is being completed. An accountant is generally not

---

[4] (...continued)
considered the contractual agreement to be of peculiar importance in reaching its decision:

> *Particularly in light of the contractual arrangement which bound defendant and entitled plaintiff* to periodic eye examinations, it cannot be said that the relationship between plaintiff and defendant terminated after each visit. [*Id.* at 194 (emphasis added).]

"caring for" the client's same tax return from year to year, as a physician cares for the same set of eyes, or the same liver, kidneys, or heart, from examination to examination. Thus, in the present case, *each successive* annual tax return represented "the matters out of which the claim for malpractice arose," a phrase to which the Court of Appeals dissent and the majority here give little apparent effect.

Further, I do not share the Court of Appeals dissent's concern that "with regard to business income taxation, certain matters such as depreciation of business assets and eligibility for certain tax credits often depend on facts that extend further into the past than the prior tax year." Slip op at 5, n 3. While such an assertion may or may not be accurate, the important factor is that the body of information and data used *each successive year* to compile, compute, and prepare an income tax return is not the same; it is not analogous to the same set of eyes or the same liver or the same heart that is examined and evaluated by a physician at each office visit. The fact that there may be some common information that is used in preparing an annual income tax return does not change the fact that it is used in conjunction with an entirely different and distinct amalgam of information and data collected specifically for each year for which the tax return is being prepared, an amalgam representing the "matters out of which the claim for malpractice [may arise]"

10

for purposes of establishing the claim's accrual date. Subsection 5838(1).[5]

---

[5] In the present case, the only allegations specifically made by plaintiffs, in bringing their claim of malpractice, are that: (1) the professional relationship with defendants existed from 1974-1996, (2) the IRS audited the annual returns in two of those years, 1991-92, and (3) pursuant to this audit, plaintiffs were assessed additional taxes for these two years. Plaintiffs here presented no allegations that any of the individual annual tax returns completed by defendants over the twenty-two-year professional relationship contained any information or data that carried over from one year to the next, or that each annual tax return was not otherwise separate and distinct.

However, the majority here would place the burden upon the defendant to come forward, in bringing a motion for summary disposition pursuant to MCR 2.116(C)(7), with additional evidence establishing that the entirety of the professional relationship did not consist of "the matters out of which the claim for malpractice arose," in order to prevail against a plaintiff's assertion that the claim for malpractice did not accrue until the end of the professional relationship. Slip op at 12 n 19. I do not agree with this allocation of the burden in the application of subsection 5838(1). Under the majority's approach, it appears that as long as a plaintiff pleads the existence of a professional relationship, "the matters out of which the claim for malpractice arose" will be presumed to consist of the entire duration of the relationship, a presumption which, in my judgment, runs contrary to the statutory language of subsection 5838(1).

The majority's argument would be more compelling if the instant matter involved the treatment of, or the provision of service to, the *same* eyes, the *same* pancreas, the *same* heart, or any other object or transaction that is treated or serviced on a continuing or interrelated basis. Thus, arguably it may be incumbent upon a defendant, when faced with a professional malpractice action involving such an object or transaction, to come forward with additional evidence demonstrating that one provided treatment or service was distinct from another. But here, in my judgment, the individual annual tax returns cannot truly be equated with the same set of eyes, pancreas, heart, or other object or transaction that is treated or serviced on a continuing or interrelated basis. Thus, I believe that it is the *plaintiff's* burden, not the defendant's, to set forth
(continued...)

11

In the present case, the "matters out of which [plaintiffs'] claim for malpractice arose" involved defendants' preparation of their 1991 and 1992 income tax returns. Thus, under the plain language of subsection 5838(1), plaintiffs' claim of professional malpractice accrued, and the two-year limitation period began to run, when defendants worked their last day with regard to these distinct returns. Even assuming that defendants worked on plaintiffs' 1992 tax return through December 1993, plaintiffs' cause of action for malpractice was barred by subsection 5805(4) on the last day of December 1995. Plaintiffs' complaint was not filed until August 1997.[6]

---

[5] (...continued)
well-pleaded allegations evidencing that there existed some connection between treatments or services occurring within the professional relationship.

In stating that "it is clear here that plaintiffs, rather than receiving professional advice for a specific problem, were receiving generalized tax preparation services from defendants," slip op at 11-12, the majority gainsays the discrete nature of each individual annual tax return prepared by defendant, and essentially considers the termination of the professional relationship itself (i.e., the end of plaintiffs "receiving generalized tax preparation services") as the point at which plaintiffs' claim for malpractice accrued. The statutory phrase "as to the matters out of which the claim for malpractice arose" is, thus, given little effect. Essentially then, my concerns about the majority's allocation of the burdens in (C)(7) motions parallel my larger concerns about the majority's focus upon the professional relationship in a malpractice action rather than upon the "matters out of which the claim for malpractice arose."

[6] I do not believe it is necessary to elaborate on the
(continued...)

12

The Court of Appeals dissent's analysis, and the majority's reliance on this analysis, effectively erode the policy bases for having statutory limitation periods in the first place. Obviously, while one policy base is to afford plaintiffs a reasonable opportunity to bring suit, statutes of limitation are also intended to: (1) compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend; (2) relieve a court system from dealing with stale claims, where the facts in dispute occurred so long ago that evidence was either forgotten or manufactured; and (3) protect potential defendants from protracted fear of litigation. *Chase v Sabin,* 445 Mich 190, 199; 516 NW2d 60 (1994).

Asserting, as the Court of Appeals dissent does in the present case, that the termination of the professional relationship is the beginning and end of the analysis in determining when a professional malpractice claim has accrued, tolls the limitation period in a potentially large number of professional malpractice cases, pending the ultimate and final termination of the professional relationship. Under the

_____

[6] (...continued)
six-month discovery rule of MCL 600.5838(2); MSA 27A.5838(2). Plaintiffs knew as early as December 1995, when they received the IRS deficiency notice, that a possible cause of action existed against defendants. See *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 223; 561 NW2d 843 (1997)(once a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim).

13

majority's interpretation of subsection 5838(1), a professional relationship may exist for one hundred years; if, perchance, malpractice was committed in the very first year of the relationship, a claim could potentially remain viable for another 101 years. Certainly, a reasonable time would have long since passed, thereby undermining the opposing party's ability to defend such a stale claim, extending the potential defendant's apprehension of litigation to unreasonable and unacceptable lengths, and unnecessarily burdening the judicial system with claims so stale as to be virtually untriable. See *Chase, supra.*

In enacting § 5838, it is reasonable to conclude that the Legislature addressed the conflict between the accrual of a simple tort claim, which generally involves but a single act or omission, and the accrual of a professional malpractice claim, where actual malpractice may occur within an extended, but nevertheless distinct, period of continuing professional service.[7]

---

[7] For example, in 1990, Mr. Smith is sued in a premises liability action. He retains Lawyer Jones for the purpose of legal representation. Because he is an extremely busy professional, Lawyer Jones overlooks the issue of personal jurisdiction in the action against Mr. Smith, fails to object to the clear absence of such jurisdiction, and, instead, files an answer on Mr. Smith's behalf, effectively waiving the issue. After extended discovery, the litigation proceeds to trial and ultimately, in 1995, to a large jury verdict against Mr. Smith. Lawyer Jones persuades Mr. Smith to appeal the verdict and Mr. Smith consents. During the pendency of the appeal process, Mr. Smith, in 1996, is

(continued...)

14

The "matters out of which [plaintiffs'] claim for

---

⁷ (...continued)
involved in an automobile accident and is sued by a person who was a passenger in the car with which Mr. Smith collided. Mr. Smith again retains Lawyer Jones to represent his legal interests in this second case. In 1997, the Michigan Court of Appeals affirms the 1995 jury verdict against Mr. Smith and he satisfies himself that further appeal is futile. The 1996 automobile accident lawsuit involves protracted litigation and continues into 2001 when it is finally set for trial. Fortunately for Mr. Smith, a jury, in 2002, returns a verdict of no cause of action regarding the 1996 automobile accident lawsuit.

Before the enactment of § 5838, the general tort statute of limitation would have applied, and Mr. Smith's claim against Lawyer Jones, for failing to object to personal jurisdiction in the first lawsuit, would have accrued in 1990, at the time the malpractice occurred, MCL 600.5827; MSA 27A.5827, and the limitation period would have run three years after the actual act of malpractice. MCL 600.5805(9); MSA 27A.5805(9). However, after the enactment of § 5838, in applying the plain language of this statute to this example, Mr. Smith's malpractice claim would have accrued in 1997, at the end of Lawyer Jones' representation of Mr. Smith in the 1990 premises liability action; the limitation period would have run two years later. MCL 600.5805(5); MSA 27A.5805(5).

A second example might involve a patient visiting a dentist on five separate occasions for the purpose of repairing a tooth. In the course of this treatment, a root canal is necessary, and the dentist negligently damages the nerve that serves the tooth, causing severe and chronic jaw pain. The purpose of subsection 5838(1), prior to the enactment of § 5838a, would be served in its application because there would be no necessity to parse out the visits, thereby placing an extremely confusing burden on the parties or factfinder, to identify which specific visit resulted in the negligently provided treatment. It would only be necessary to examine the entire sequence of events, regarding that course of treatment, to determine the accrual date of the plaintiff's claim of professional malpractice.

Thus, a very different result is obtained under the facts of either example when the plain language of subsection 5838(1) is applied, compared with the result obtained under the general tort statute of limitation.

15

malpractice arose" involved defendants' preparation of plaintiffs' 1991 and 1992 income tax returns. Pursuant to the plain language of subsection 5838(1), the last date on which defendants worked in preparing such returns was the date on which plaintiffs' claim `for professional malpractice accrued for purposes of the running of the statute of limitations. Because plaintiffs failed to file their complaint until well after the applicable two-year limitation period had run, their claim for professional malpractice, in my judgment, was time-barred and the circuit court properly granted summary disposition in favor of defendants in this case. I would, therefore, affirm.

S T A T E   O F   M I C H I G A N

SUPREME COURT


MARTIN I. LEVY and
MARTIN I. LEVY, D.D.S., P.C.,

    Plaintiffs-Appellants,

v                                 No. 115603

MARK L. MARTIN, GERALD HOSKOW,
and HOSKOW & MARTIN, P.C.,

    Defendants-Appellees.
_____

WEAVER, C.J. (*dissenting*).

    I would grant leave to appeal in this case because I believe the issue presented needs oral argument.